IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 2000 Session

## GARY WAYNE ROBERTSON v. LORI VANHOOSER ROBERTSON

**Appeal from the Circuit Court for Hamilton County**
**No. 96-DR-2492      W. Neil Thomas, III, Judge**

**FILED AUGUST 25, 2000**

**No. E2000-01698-COA-RM-CV**

---

The Supreme Court granted Mr. Robertson's application for permission to appeal and remanded this case to us "for reconsideration in light of *Crabtree v. Crabtree* [16 S.W.3d 356 (Tenn. 2000)]." Upon reconsideration, we adhere to our original opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part; Modified in Part; Reversed in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., joined. DON T. MCMURRAY, J., who signed the original opinion in this case, died while this matter was pending before the Supreme Court.

Leroy Phillips, Jr., Chattanooga, Tennessee, for the appellant, Lori Vanhooser Robertson.

Sherry B. Paty, Chattanooga, Tennessee, for the appellee, Gary Wayne Robertson.

## OPINION

The Supreme Court in *Crabtree* focused on several issues, primary among them being "whether a trial court may order concurrent or successive awards of alimony in futuro and rehabilitative alimony in the initial decree of divorce." *Id*. at 357. The Supreme Court concluded that "a concurrent award of both types of alimony is inconsistent." *Id*. at 360. It opined that "[a]t the time of the decree, a trial court must necessarily find that the recipient of alimony either can be or cannot be rehabilitated although that determination is subject to later modification." *Id*. It concluded that the evidence preponderated in favor of a finding that Ms. Crabtree could be rehabilitated. *Id*. While increasing the amount of monthly rehabilitative alimony, it reversed the trial court's award of alimony in futuro -- an award that was to have followed the trial court's award of five years of rehabilitative alimony. *Id*. at 361.

The primary issue in *Crabtree* is not present in the instant case. Neither the trial court nor this Court ordered concurrent or successive awards of rehabilitative alimony and alimony in futuro.

We believe[1] the Supreme Court remanded the instant case to us because it wanted us to re-evaluate our decision that Ms. Robertson cannot be rehabilitated. This we will do.

In *Crabtree*, the Supreme Court again[2] looked at the subject of rehabilitative alimony as that concept is codified at T.C.A. § 36-5-101(d) (Supp. 1999). Among other things, it said the following:

> [T]he legislature has demonstrated a preference for an award of rehabilitative alimony to rehabilitate an economically disadvantaged spouse.
>
>      *    *    *
>
> In *Self* [*v. Self*, 861 S.W.2d 360 (Tenn. 1993)], we held that § 36-5-101 reflects an obvious legislative policy to eliminate the dependency of one ex-spouse upon the other and to relieve the parties of "impediments incident to the dissolved marriage." Accordingly, alimony in futuro should be awarded only when the trial court finds that "economic rehabilitation is not feasible and long-term support is necessary."
>
>      *    *    *
>
> In *Aaron* [*v. Aaron*, 909 S.W.2d 408 (Tenn. 1995)] this Court awarded alimony in futuro to a homemaker with a high school education who had never worked outside the home. This Court noted that although the award would "not put her in the same position in which she was prior to the divorce, it will provide her with 'closing in' money; that is she will be enabled to more closely approach her former economic position." This statement, however, was intended neither to provide a new standard for awarding alimony nor to suggest that every spouse should be entitled to be placed in the same financial condition occupied prior to the divorce. *Aaron* merely acknowledged that, where rehabilitation is *not* feasible, an award of alimony in futuro will not always be sufficient to place a disadvantaged spouse in the financial position occupied pre-divorce.
>
>      *    *    *

---

[1] The order of remand simply provides that the Supreme Court remanded the instant case to us "for reconsideration in light of *Crabtree v. Crabtree*.".

[2] The Supreme Court had earlier discussed this subject in *Self v. Self*, 861 S.W.2d 360 (Tenn. 1993).

> An award of rehabilitative alimony pursuant to Tenn. Code Ann. §
> 36-5-101 must be predicated upon a finding that the recipient can be
> economically rehabilitated.

*Id*. at 358-60 (citations omitted) (emphasis in ***Crabtree***). We believe the Supreme Court's remand of the instant case may indicate that body's doubts regarding the correctness of our decision that Ms. Robertson cannot be rehabilitated, when viewed in the context of the above-quoted principles. If this be the case, we welcome the opportunity to further explain the rationale for our decision.

We start by noting that the words, "rehabilitated," "rehabilitative," and "rehabilitation," are not defined in T.C.A. § 36-5-101(d) (Supp. 1999). All are derivatives of the word "rehabilitate," which is also not defined in the statute. What did the legislature intend by the use of these derivatives of "rehabilitate"? The cases clearly hold that courts are to ascertain the intent of the legislature "primarily from the natural and ordinary meaning of the language contained...when read in context with the whole statute." ***James Cable Partners v. City of Jamestown***, 818 S.W.2d 338, 341 (Tenn. Ct. App. 1991).

The common thread to the various definitions of the word "rehabilitate" is that of *restoration*. The following is one four-prong definition of the word "rehabilitate":

> 1. To restore (*e.g.*, a handicapped person) to customary activity
> through education and therapy. 2. To reinstate the good name of. 3.
> To restore the former rank, privileges, or rights of. 4. To restore to
> a former state.

*Webster's II New Riverside University Dictionary* 991 (1994). *See also American Heritage Dictionary* 1096 (1978). While, generally speaking, these definitions all embrace the concept of restoration, they do not directly supply the *object* of that restoration, especially as the concept of rehabilitating is embodied in T.C.A. § 36-5-101(d). We are left with the question: Rehabilitate or restore to *what*?

At the outset, it should be noted that a court does not reach the issue of rehabilitation unless the spouse requesting alimony is "economically disadvantaged, relative to the other spouse." T.C.A. § 36-5-101(d)(1). If the court does not find "such relative economic disadvantage," *id*., it should go no further; in the absence of such economic disadvantage the requesting party is not entitled to alimony, rehabilitative or otherwise. On the other hand, if the court finds that the spouse requesting alimony suffers from a relative economic disadvantage *vis-a-vis* his or her spouse, the court should continue the inquiry and decide "the nature, amount, length of term, and manner of payment" of alimony. ***Id***.

In the instant case, it is clear to us that Ms. Robertson is economically disadvantaged relative to Mr. Robertson for the reasons expressed in our original opinion. We will not repeat that analysis here.

We return to the question of rehabilitation. In contemplating the question posed earlier -- rehabilitation to *what*? -- we believe the statute suggests the answer. Expanding our search to another part of T.C.A. § 36-5-101, specifically subsection (d)(1)(I), we find that "in determining the nature" of the appropriate spousal support, *see* subsection (d)(1), we are to consider, among other things, "[t]he standard of living of the parties established during the marriage." T.C.A. § 36-5-101(d)(1)(I). We believe this means that in marriages of long duration[3] where a spouse is economically disadvantaged *vis-a-vis* the other spouse, the parties' standard of living should be the measuring stick by which and against which a court determines whether or not an individual can be rehabilitated. This is not to say that the court must find that the requesting spouse can be rehabilitated to the exact standard of living that he or she enjoyed during the marriage. That standard of living is simply a measuring stick against which the rehabilitation analysis is made. In the final analysis, the court should determine whether the evidence preponderates that the requesting spouse can be restored to a standard that is reasonable *when compared to the parties' pre-divorce standard.*

There is absolutely nothing in the statutory language to suggest that the correct rehabilitation inquiry is whether a person can be restored to a "pretty good" lifestyle or to a subsistence level of existence or to a poverty-line lifestyle. It seems to us that the concept of rehabilitation is not a "one size fits all." We do not believe this concept can be viewed in a vacuum. It must be viewed in the context of the parties' pre-divorce standard of living.

We recognize that the Supreme Court in **Crabtree** suggested that not every economically disadvantaged spouse is "entitled to be placed in the same financial condition occupied prior to the divorce." 16 S.W.3d at 359-60. We do not mean to suggest otherwise. The fact that one cannot be rehabilitated to an economic station in life approximating his or her pre-divorce standard of living does not necessarily mean that said individual is entitled to spousal support in an amount that will exactly reach that standard. The proof may reflect that a requesting spouse can be rehabilitated to a standard of living that is reasonable in relation to the one enjoyed by that party prior to the divorce. In any event, the appropriate answer to the rehabilitation question depends upon a careful weighing of all of the factors set forth at T.C.A. § 36-5-101(d)(1)(A)-(L). When these factors are considered, a court may determine that the other party does not have the resources to pay all of the necessary support, or that the requesting spouse's relative fault is such as to militate against an award of any or all of the needed support, or, for any one or more of a number of other reasons, that the other party should not be ordered to pay the full amount of support that is required to reach a reasonable approximation of the requesting spouse's former standard of living; but we believe the only fair reading of the statute is that the *inquiry* as to whether a requesting spouse can be *rehabilitated* must be viewed in the context of "[t]he standard of living of the parties established during the marriage." T.C.A. § 36-5-101(d)(1)(I). To find a different measuring stick is to graft onto the statute an economic status that is not expressly stated or otherwise suggested in the statutory scheme.

---

[3]Short marriages are typically approached differently. For example, on the subject of division of property, *see* **Batson v. Batson**, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988).

Other states seem to have adopted the approach suggested in this opinion. The Florida statute is similar to ours:

(1) In a proceeding for dissolution of marriage, the court may grant alimony to either party, which alimony may be rehabilitative or permanent in nature.

\* \* \*

(2) In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:

(a) The standard of living established during the marriage.

(b) The duration of the marriage.

(c) The age and the physical and emotional condition of each party.

(d) The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each.

(e) When applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment.

(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party.

(g) All sources of income available to either party.

The court may consider any other factor necessary to do equity and justice between the parties.

Fla. Stat. Ann. § 61.08 (1997). In **Blumberg v. Blumberg**, 561 So. 2d 1187 (Fla. Dist. Ct. App. 1989), the Florida court construed the Florida statute as follows:

The purpose of rehabilitative alimony is to assist a spouse in becoming self-sufficient, and hopefully placed in a position to maintain the lifestyle to which he or she had become accustomed during the marriage.

*Id*. at 1188 (citations omitted).  The court went on to further explain the concept under discussion:

> Furthermore, self-sufficiency connotes more than subsistence or partial self-support.  Courts require more than a showing of mere employability or a capacity for subsistence level self-support in order to classify a person as rehabilitated.

*Id*. at 1189 (citations omitted).  This subject is also discussed in the case of ***Bissell v. Bissell***, 622 So. 2d 532 (Fla. Dist. Ct. App. 1993):

> An award of rehabilitative alimony must be predicated upon evidence of a need for the alimony and the other party's ability to pay, as well as evidence that the party seeking the rehabilitative alimony "has the ability through retraining or education *to provide for a standard of living reasonably commensurate with the standard established during the marriage*."

*Id*. at 533 (citation omitted) (emphasis added).

In addition to Florida, other states have recognized the significance of the former standard of living in the rehabilitation inquiry.  The Supreme Court of New Jersey addressed the subject thusly:

> In this matter, Mrs. Crews was awarded rehabilitative alimony by the trial court.  It is well recognized that a rehabilitative alimony award is intended to "enable [the] former spouse to complete the preparation necessary for economic self-sufficiency."  It is "payable for a terminable period of time when it is reasonably anticipated that a spouse will no longer need support."  But, "self-support" does not mean some subsistence level; it describes the point at which the supported spouse is deemed to have reached a level where he or she can support himself or herself in a manner reasonably comparable to the marital standard of living.

***Crews v. Crews***, 164 N.J. 11, 34, 751 A.2d 524, 536 (N.J. 2000) (citations omitted).[4]  *See also **In re Marriage of Ward***, 641 N.E.2d 879, 884 (Ill. App. Ct. 1994) ("The policy underlying rehabilitative maintenance is to sever all financial ties between the former couple in an expeditious, but just, manner.  Each former spouse should be independent of the other as soon as is practicable.  As a result, spouses may have to accept employment that, while not being ideal, provides for a reasonable approximation of the marital standard of living."); ***Moriarty v. Stone***, 668 N.E.2d 1338, 1344 (Mass. App. Ct. 1996) (holding that an award of alimony is improper absent a finding of

---

[4]The New Jersey statute is found at N.J. Stat. Ann. § 2A: 34-23 (West 1987).

financial need on the part of the recipient spouse and that "[t]he standard of need is measured by the 'station' of the parties -- by what is required to maintain a standard of living comparable to the one enjoyed during the marriage."); *Wiege v. Wiege*, 518 N.W.2d 708, 711 (N.D. 1994) ("A spouse's need for rehabilitation is not limited to the 'prevention of destitution,' but can also be based on their standard of living before the divorce.").

Turning to the facts of the instant case, and comparing those facts to the facts of *Crabtree*, we believe the holding and rationale of the latter case support the conclusion in our original opinion that Ms. Robertson cannot be rehabilitated when viewed in the context of "[t]he standard of living of the parties established during the marriage." *See* T.C.A. § 36-5-101(d)(1)(I). While Ms. Crabtree clearly could be rehabilitated to a reasonable standard of living, viewed in the context of her pre-divorce standard of living, we do not find that the same can be said of Ms. Robertson. We believe a comparison of the two clearly reflects this.

Ms. Crabtree continued to work as a certified public accountant during the entirety of the parties' 23 years of marriage; Ms. Robertson was basically a homemaker, wife and parent during her 23 years of marriage. Ms. Crabtree is a member of one of the best-paid professions; Ms. Robertson is a would-be teacher -- arguably the lowest paid of all the true professions. Ms. Crabtree's potential gross income of $100,000 places her in a position to enjoy an affluent lifestyle, if not the facially opulent one of her marriage; Ms. Robertson's salary of $22,500, with no evidence of any potential for large increases, will prevent her from achieving the middle class status of her prior station which was funded by two incomes of approximately $66,000 - $80,000 per year.

Both Ms. Crabtree and Ms. Robertson were married for approximately half of their probable work lives; but Ms. Crabtree obviously accrued Social Security credit on her own account based on a substantial income during the entire period of the marriage. The proof indicates that Ms. Robertson had little income during her marriage that entitled her to Social Security credit on her own account.

The proof is clear that Ms. Crabtree's marriage did not hinder her development as a certified public accountant; on the other hand, Ms. Robertson delayed her pursuit of a career for some 23 years. At age 42, she is just now getting started. She likely will find herself competing with teachers her age who have 20 years, more or less, of teaching experience.

Certainly, Ms. Robertson could maintain a subsistence standard of living on her gross salary of $22,500; but, as previously indicated, this is not the test. When her prior middle class standard of living is used as the measuring stick, the standard of living that she can achieve on her own cannot be considered a reasonable one.

Our original decision does not run afoul of the legislative policy favoring rehabilitative alimony. We recognize that policy and certainly do not seek to set a new policy contrary to this obvious legislative enactment; but our decision simply recognizes that the policy does not come into

play until a finding is made that rehabilitation, as contemplated by the statute, is feasible. *See* T.C.A. § 36-5-101(d)(1). In this case, the evidence preponderates that rehabilitation is simply not feasible.

Having found that Ms. Robertson cannot be rehabilitated, we concluded, and still conclude, that Mr. Robertson could afford to pay $600 per month when he reached a point where he was no longer obligated to pay child support. Considering the factors set forth in T.C.A. § 36-5-101(d)(1)(A)-(L), we find that Ms. Robertson has the need for this amount, that Mr. Robertson can afford to pay at this rate, and that the parties' relative fault -- particularly Mr. Robertson's adultery – militate in favor of our in futuro award. While this amount will not place her back fully to her previous standard of living, it can serve as "closing in" money as contemplated by the *Aaron* case. 909 S.W.2d at 411.

We adhere to our finding and holding that Ms. Robertson cannot be rehabilitated as that concept is set forth in T.C.A. § 36-5-101(d)(1). We also adhere to our decision that Mr. Robertson should pay alimony in futuro at the rate set forth in our original opinion. We republish our opinion released November 9, 1998, in all respects, with costs taxed to the appellee.

 

 

 
_____
CHARLES D. SUSANO, JR., JUDGE