IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE

## STEPHEN EARL CRABTREE v. NANCY CHOPPIN CRABTREE

**Appeal by Permission from the Circuit Court for Davidson County**
**No. 96D-2149      Muriel Robinson, Judge**

---

**No. M1997-00262-SC-R11-CV Decided April 24, 2000**
**FOR PUBLICATION**

---

We granted this appeal to address whether a trial court may order concurrent or successive awards of alimony in futuro and rehabilitative alimony in the initial decree of divorce. We hold that the trial court erred in awarding alimony in futuro following a period of rehabilitative alimony. We modify the award of alimony in this case to a single award of rehabilitative alimony in the amount of $2,500 per month for a period of five years. As provided by statute, the trial court will retain jurisdiction for the duration of the rehabilitative alimony award. The awards of attorney's fees are affirmed, and the case is remanded for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11; Judgment of the Court of Appeals Affirmed in Part; Reversed in Part; Modified and Remanded**

HOLDER, J., delivered the opinion of the court, in which ANDERSON, C.J., and DROWOTA, BIRCH, and BARKER, JJ., joined.

Mike W. Binkley, Nashville, Tennessee, for the Appellant, Stephen Earl Crabtree.

Edward M. Yarbrough, Nashville, Tennessee, for the Appellee, Nancy Choppin Crabtree

### OPINION

The parties were married for twenty-three years. Nancy Choppin Crabtree was forty-three years old at the time of the entry of the final decree of divorce. She graduated with highest honors from the University of Tennessee at Knoxville and became a certified public accountant. Ms. Crabtree worked two years for the accounting firm of Ernst and Whinney. She then decided to leave her full-time employment position to start a family but continued to work out of her home as a certified public accountant. In the year prior to the divorce, she earned approximately $41,200 per year working thirty hours per week. She had approximately 100 clients.

Stephen Earl Crabtree was a stockbroker at J.C. Bradford. Mr. Crabtree's gross income

varied during the six years prior to the divorce.[1] At the time of trial in 1997 his net monthly income was $13,582.71, including his partnership distribution. Both Mr. Crabtree and Ms. Crabtree enjoy good health.

The parties are the parents of two daughters. At the time of trial, Elizabeth Lee was nineteen years old and enrolled at Georgetown University. Jennifer Lynn was sixteen years old and enrolled at Harpeth Hall, a private school. Jennifer Lynn was expected to graduate from high school in 1999.

Mr. Crabtree admitted to adultery, and the divorce was granted on the stipulated grounds of inappropriate marital conduct. Mr. Crabtree was awarded marital property valued at approximately $465,000. Ms. Crabtree was awarded marital property valued at approximately $373,000 and child support in the amount of $1,312 per month. The trial court awarded rehabilitative alimony in the amount of $1,700 per month for five years to be followed by alimony in futuro in the amount of $1,200 per month until Ms. Crabtree's death or remarriage. Finally, the trial court ordered Mr. Crabtree to pay $7,500 of Ms. Crabtree's attorney's fees.

Mr. Crabtree appealed the trial court's award of alimony in futuro and the award of attorney's fees. Ms. Crabtree raised an issue regarding child support. The Court of Appeals affirmed the trial court's award of both alimony and attorney's fees but remanded the case on the issue of child support. The appellate court ordered that on remand the trial court should apply the child support guidelines and that any deviation from the guidelines must be supported by written findings. The parties do not appeal this issue. The Court of Appeals also awarded Ms. Crabtree additional attorney's fees incurred on appeal. We granted review to address whether the order of alimony in futuro following a period of rehabilitative alimony in the initial decree was error.

## ANALYSIS

Mr. Crabtree argues that the trial court erred in awarding Ms. Crabtree alimony in futuro in addition to rehabilitative alimony. In support of this argument, he contends that she should receive only rehabilitative alimony due to her earning capacity as a certified public accountant.

The alimony and child support statutes are codified at Tenn. Code Ann. § 36-5-101, et. seq. Rehabilitative alimony is addressed in Tenn. Code Ann. § 36-5-101(d) (1992) and provides:

> It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those

---

[1] The evidence demonstrates that Mr. Crabtree earned $230,943 in 1991, $387,073 in 1992, $353,225 in 1993, $254,437 in 1994, $400,864 in 1995, and $417,034 in 1996.

> set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3).

Id. Accordingly, the legislature has demonstrated a preference for an award of rehabilitative alimony to rehabilitate an economically disadvantaged spouse.

The legislature has provided statutory criteria to be employed when determining the appropriate form and duration of spousal support. Tenn. Code Ann. § 36-5-101(d)(1). When determining:

> the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
>
> (A)  The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (B)  The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
>
> (C)  The duration of the marriage;
>
> (D)  The age and mental condition of each party;
>
> (E)  The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (F)  The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
>
> (G)  The separate assets of each party, both real and personal, tangible and intangible;
>
> (H)  The provision made with regard to the marital property as defined in § 36-4-121;

(I)     The standard of living of the parties established during the marriage;

(J)     The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K)     The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L)     Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1).

This Court previously addressed the application of Tenn. Code Ann. § 36-5-101(d)(1) in Self v. Self, 861 S.W.2d 360 (Tenn. 1993). In Self, we held that § 36-5-101 reflects an obvious legislative policy to eliminate the dependency of one ex-spouse upon the other and to relieve the parties of "impediments incident to the dissolved marriage." Id. at 361. Accordingly, alimony in futuro should be awarded only when the trial court finds that "economic rehabilitation is not feasible and long-term support is necessary." Id.

The legislature amended Tenn. Code Ann. § 36-5-101 while the Self appeal was pending in this Court. The amendment permitted modifications of rehabilitative alimony awards and provided:

An award of rehabilitative, temporary support and maintenance *shall remain in the court's control for the duration of such award*, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances. . . . The recipient of the support and maintenance shall have the burden of proving that all reasonable efforts at rehabilitation have been made and have been unsuccessful.

Tenn. Code Ann. § 36-5-101(d)(2) (emphasis added). This amendment, however, was inapplicable to our analysis in Self due to the effective date of the amendment. Nonetheless, we recognized in Self that the amended form of the statute provides courts with the authority to order awards designed to accomplish the rehabilitation of a spouse. Self, 861 S.W.2d at 363. We noted that this provision would allow for a continued monitoring of the parties' circumstances and would provide trial courts with more flexibility in designing suitable financial arrangements for the dissolution of marriages. Id.

In this case, the Court of Appeals recognized that the award of rehabilitative alimony would assist Ms. Crabtree in realizing her full economic potential. The intermediate appellate court, however, was concerned that rehabilitative alimony would:

> not place her anywhere near an equal footing with Husband nor will she be able to continue living in the manner in which she had become accustomed during this twenty-three year marriage. The award of alimony *in futuro* will further assist her in this regard and provide her with "closing in" money.

The court cited Aaron v. Aaron, 909 S.W.2d 408, 411 (Tenn. 1995), in support of its conclusion.

We believe that the Court of Appeals' reliance on Aaron was misplaced. In Aaron this Court awarded alimony in futuro to a homemaker with a high school education who had never worked outside the home. This Court noted that although the award would "not put her in the same position in which she was prior to the divorce, it will provide her with 'closing in' money; that is she will be enabled to more closely approach her former economic position." Aaron, 909 S.W.2d at 411. This statement, however, was intended neither to provide a new standard for awarding alimony nor to suggest that every spouse should be entitled to be placed in the same financial condition occupied prior to the divorce. Aaron merely acknowledged that, where rehabilitation is *not* feasible, an award of alimony in futuro will not always be sufficient to place a disadvantaged spouse in the financial position occupied pre-divorce.

If an award of rehabilitative alimony is justified by the parties' circumstances, a trial court initially should award rehabilitative alimony only. An award of rehabilitative alimony pursuant to Tenn. Code Ann. § 36-5-101 must be predicated upon a finding that the recipient can be economically rehabilitated. Once awarded, rehabilitative alimony may be modified if the recipient's prospects for economic rehabilitation materially change. If rehabilitation is not feasible, the trial court may then make an award of alimony in futuro. Accordingly, a concurrent award of both types of alimony is inconsistent. At the time of the decree, a trial court must necessarily find that the recipient of alimony either can be or cannot be rehabilitated although that determination is subject to later modification. Allowing concurrent awards of alimony in futuro and rehabilitative alimony would require a trial court to engage in an act of clairvoyance. The trial court would not only be required to anticipate the duration necessary for rehabilitation but would also be required to anticipate the future needs of a spouse who, it has been determined, can be rehabilitated.

We recognize that a trial court has wide discretion in determining whether an award of alimony should be rehabilitative or in futuro. Appellate review of findings of fact by the trial court are de novo upon the record accompanied by a presumption of the correctness of the findings. See Tenn. R. App. P. 13(d). See also Hanover v. Hanover, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1989) (amount of alimony awarded is largely a matter left to the discretion of the trial court, and the appellate courts will not interfere except in the case of an abuse of discretion). The trial court is required to consider the factors set forth at Tenn. Code Ann. § 36-5-101(d)(1)(A)--(L). In this case, the trial court stated that it considered the entire record prior to its ruling. It did not, however, make

findings of fact with regard to the factors considered. Accordingly, there are no findings of fact that we may presume to be correct. We therefore must conduct our own independent review of the record to determine where the preponderance of the evidence lies. See Brooks v. Brooks, 992 S.W.2d 403, 405 (Tenn. 1999).

We conclude that an award of alimony in futuro in this case is not justified and does not recognize or further the legislative purpose of encouraging divorced spouses to become self-sufficient. The trial court recognized that Ms. Crabtree's rehabilitation was feasible. That conclusion is supported by the record. Both parties have received sufficient education to enable them to compete in the workforce. At the time of the decree, Mr. Crabtree's earning capacity was greater than that of Ms. Crabtree. Tenn. Code Ann. § 36-5-101(d)(1)(A). It is clear from the record, however, that Ms. Crabtree's earning capacity exceeds her current earnings. Ms. Crabtree is a forty-three-year-old college graduate who is a certified public accountant. Tenn. Code Ann. § 36-5-101(d)(1)(B), (D). Her skills were sufficient for her to be employed by a large accounting firm. After leaving that firm to start a family, Ms. Crabtree worked part-time without interruption until the time of trial. At trial, Mr. Crabtree provided the only estimate of Ms. Crabtree's earning capacity. He testified that she could earn between $65,000 and $100,000 annually.[2] There has been no testimony that Ms. Crabtree will need further training to "improve [her] earning capacity to a reasonable level." Tenn. Code Ann. § 36-5-101(d)(1)(B).

Neither party has health problems. Tenn. Code Ann. § 36-5-101(d)(1)(D), (E). With her younger daughter's graduation from high school in 1999, Ms. Crabtree's need to work part-time has diminished.[3] Tenn. Code Ann. § 36-5-101(d)(1)(F). Although Mr. Crabtree admitted to adultery, the divorce was granted on the stipulated grounds of inappropriate marital conduct. There was no testimony concerning the relative fault of the parties. The trial court, accordingly, made no findings with regard to this factor. Tenn. Code Ann. § 36-5-101(d)(1)(K).

The division of marital property provided Ms. Crabtree with $373,000, or approximately 45% of the parties' assets. Part of the award was in the form of the marital residence, which was estimated to have a net value of $145,223. No appeal was taken from the trial court's division of the parties' marital assets. Tenn. Code Ann. § 36-5-101(d)(1)(H).[4]

---

[2] At trial, Mr. Crabtree testified that Ms. Crabtree had been working only part-time and undercharging her clients. He testified that she could increase her earnings by increasing her client base and by raising her fee for services.

[3] The cost of private schooling and of the children's college educations will be paid by Mr. Crabtree.

[4] In cases in which there is a disparity between the relative earning capacities of the parties, a trial court also may consider adjusting the award of marital assets to assist the disadvantaged spouse. Having made that adjustment, this factor then becomes one of those factors to be considered in determining the proper award of alimony. Tenn. Code Ann. § 36-5-101(d)(1)(H).

After reviewing the relevant statutory factors and the record in this case, we affirm the trial court's award of rehabilitative alimony for a period of five years. While holding that alimony in futuro is inappropriate at this time, we recognize that we have eliminated the income stream the trial court found was needed by Ms. Crabtree. We shall, therefore, modify the amount of the award of rehabilitative alimony to recognize the effect of our holding. Applying the factors set forth in Tenn. Code Ann. § 36-5-101(d)(1), we increase the trial court's award of rehabilitative alimony from $1,700 per month for five years to $2,500 per month for five years. This increase in rehabilitative alimony will assist Ms. Crabtree in making the transition from part-time to full-time employment before her alimony is scheduled to end. As required by statute, the trial court will retain jurisdiction of the award of rehabilitative alimony during the pendency of the rehabilitative alimony award. The award of alimony in futuro is reversed.

## CONCLUSION

We hold the trial court erred in awarding alimony in futuro following a period of rehabilitative alimony in the initial decree of divorce. We affirm the trial court's award of rehabilitative alimony for a period of five years. The amount of the award is increased to $2,500 per month. The award of alimony in futuro is reversed. As provided by statute, the trial court will retain jurisdiction for the duration of the rehabilitative alimony award. We have reviewed the award of attorney's fees in this case, and we have found no abuse of discretion. The trial court's award of attorney's fees in the amount of $7,500 is affirmed. The Court of Appeals awarded additional attorney's fees to Ms. Crabtree and remanded the case to the trial court for a determination of the amount of that award. We affirm the Court of Appeals in this respect.

The case is remanded to the trial court for further proceedings consistent with this opinion. The costs of the appeal to this Court only shall be assessed equally against Mr. and Ms. Crabtree for which execution may issue if necessary.