IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 5, 2000 Session

## JILL MICHELLE KAUFMANN RABUCK v. ROBERT LEWIS RABUCK

**Appeal from the Chancery Court for Roane County**
**No. 13,372     Hon. Frank V. Williams, III, Chancellor**

**FILED DECEMBER 12, 2000**

**No. E2000-0474-COA-R3-CV**

In this divorce case, Husband appeals the amount and type of alimony awarded to Wife and the Trial Court's award of Wife's attorney fees. The Trial Court first awarded Wife $5,800 per month alimony in futuro, but after hearing arguments of counsel on Husband's Motion to Alter or Amend, reduced the award to $4,800 alimony in futuro and $1,000 per month for 24 months as rehabilitative alimony. After the Trial Court's Judgment was filed, our Supreme Court held, in *Crabtree v. Crabtree,* 16 S.W.3d 356 (Tenn. 2000), that a concurrent award of rehabilitative and in futuro alimony is inconsistent. Accordingly, Wife may receive alimony in futuro or rehabilitative alimony but she may not receive both concurrently. We therefore modify the Trial Court's Judgment to reflect that Wife is awarded $5,800 per month alimony in futuro for 24 months, and $4,800 per month alimony in futuro thereafter. We affirm the Trial Court's award of Wife's attorney fees at trial but decline to award Wife's attorney fees on appeal.

**Tenn. R. App. 3; Judgment of the Chancery Court Affirmed as Modified; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Browder G. Williams, Harriman, Tennessee, for the Appellant, Robert Lewis Rabuck.

David E. Caywood and Stacy A. Ingle, Memphis, Tennessee, for the Appellee, Jill Michelle Kaufmann Rabuck.

# OPINION

## Background

Robert Lewis Rabuck ("Husband") and Jill Kaufmann Rabuck ("Wife") were married in 1970 in Pennsylvania. They have one adult daughter. During the course of their 28-year marriage, the parties moved ten or twelve times in furtherance of Husband's career. In 1989, they purchased a 35-acre farm in Pennsylvania. When Husband began working for Pathway Bellows in 1995, he moved to Harriman, Tennessee. They agreed Wife would stay on the farm in Pennsylvania with their daughter while Husband worked in Harriman. It was anticipated that they would divide their time between the farm and the Harriman residence. In 1997, Husband became involved in a romantic relationship with another woman, who moved into his Harriman residence with her two children. After Wife discovered the relationship and made an unsuccessful attempt at reconciliation, she filed for divorce on August 10, 1998, alleging that Husband was guilty of inappropriate marital conduct. Husband admitted adultery, and Wife was granted the divorce based on inappropriate marital conduct. The Trial Court divided the marital property so as to achieve an approximate 50-50 split, with any amount Wife received in excess of 50% to be considered as alimony in solido.[1] Neither party appeals the division of marital assets.

Husband has a Master's degree in Industrial Administration Operations Research. He worked for ten years in management positions with General Electric, followed by five years at Thermal Electron, first as a consultant and then as CEO. In 1995, Husband left Thermal Electron and became President and CEO of Pathway Bellows in Oak Ridge. In the five years prior to trial, Husband reported the following income on his federal income tax returns:

*1994:* $153,236    *1995:* $242,152    *1996:* $141,257
*1997:* $191,298    *1998:* $296,541

Wife has an Associate Degree in Executive Secretarial Science. She worked as an Executive Secretary for the first seven years of the parties' marriage, until the birth of their daughter. She did not earn any substantial wages after that time. She testified that she did some part-time clerical work during a period of time when the parties lived in Pine Grove, Pennsylvania, and that she earned approximately $1,000 in 1997 and $800 in 1998 by working as a waitress. Although she has experience as an Executive Secretary, she has not held such a job in many years, and she has no training or experience using a word processor or computer to accomplish secretarial tasks.

Husband is in good health except for high blood pressure, for which he takes daily medication. Wife is in good health except for bilateral carpal tunnel syndrome, which she testified is aggravated by heavy work, causes pain and numbness in her hands and requires her to wear wrist splints and undergo massage therapy.

---

[1] Husband says Wife received 55% of the marital property.

The testimony at trial as to the parties' monthly expenses is disconcerting in several respects. As stated, Wife has no regular monthly income except that which Husband provides. She has itemized monthly expenses totaling $5,967.72, all of which appear to be customary and usual except for a claimed expense of $700 monthly for "pet expenses (animal food) veterinarian bills, litter, farrier." Indeed, Husband testified that Wife's insistence on keeping numerous pets, including four dogs, 21 cats, six chickens, two rabbits, two sheep and two horses, caused friction in the marriage. Husband claimed monthly net income of $11,350.24 and itemized expenses totaling $9,115, including $1,000 per month for "household supplies/food," $1,000 per month for "outside meals," $1,000 per month for "personal entertainment" and an additional $1,000 per month for "vacation." When questioned, he testified that, on occasion, he is able to acquire such meals, entertainment and vacation as business expenses, but that *if he were not able to do so,* he would indeed incur the expense amounts claimed. We quote his testimony:

> If I was going to go skiing and I could not get there on a business trip or if I was going to play golf in Myrtle Beach or Florida without being on a business trip or if I wanted to go to the Caribbean or fishing, which I have done, okay, and I was not able to tie it into a business trip, it would easily cost me the amount that's on there. And there's no guarantee that I'm going to get business trips every year to do the things I want to do.

The Trial Court found that Wife was entitled to a divorce based on Husband's inappropriate marital conduct and awarded Wife $5,800 per month in alimony. The Trial Court found this to be a reasonable amount, an amount which Husband can pay, an amount Wife needs, and an amount which should be paid each month until Wife's death or remarriage or the death of Husband.

Husband filed a Motion to Alter or Amend Final Decree, seeking "to have the court reduce substantially the permanent periodic alimony award made to the plaintiff in this cause," and arguing that Wife has the ability to be rehabilitated through further education and training and that the assets awarded to Wife, which included the parties' farm and substantial financial assets, will provide Wife with significant income, if properly managed. Husband also argued that the monthly living expenses claimed by Wife "were greatly exaggerated and greatly exceeded what is necessary for her to maintain her standard of living." Husband also argued that though he earns a substantial income, he reasonably cannot provide the alimony the Trial Court awarded to Wife. The Trial Court heard arguments of counsel on Husband's Motion and entered an Order modifying the Final Decree to reduce the award of permanent periodic alimony to $4,800 per month and awarding rehabilitative alimony of $1,000 per month for a period of 24 months.

Notwithstanding that success, Husband appeals to this Court, complaining that only rehabilitative alimony should be awarded as the evidence shows that Wife is capable of rehabilitation. Husband also argues that the award of Wife's attorney fees should be reversed. Wife

argues on appeal that the Trial Court erred by modifying its final decree reducing the award of alimony in futuro to $4,800 per month from $5,800 per month.

## Discussion

Our role, in cases such as this, is to review the record of the Trial Court *de novo* with the presumption that the decision of the Trial Court with respect to the facts is correct unless the evidence preponderates against such factual determinations. Tenn. R. App. P. 13(d); *Brooks v. Brooks,* 992 S.W.2d 403, 404 (Tenn. 1999). However, this Court will conduct a *de novo* review of the Trial Court's conclusions of law, with no presumption of correctness. *See Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

As stated, Husband raises the issue of whether the Trial Court's award of alimony to Wife is excessive, contrary to the weight of the evidence and amounts to an abuse of the Trial Court's discretion. This Court has held that "[t]rial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration." *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998). The Trial Court's decision regarding this issue will not be disturbed on appeal "unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Id.*

After the Trial Court's Judgment was filed in this case, our Supreme Court held that a concurrent award of alimony in futuro and rehabilitative alimony is inconsistent. *Crabtree v. Crabtree*, 16 S. W.3d 356 (Tenn. 2000). Accordingly, we must determine whether Wife is entitled to rehabilitative alimony or alimony in futuro, but she may not receive both concurrently.

When determining whether a spouse should receive support, trial courts are to follow Tenn. Code Ann. § 36-5-101(d)(1), which provides:

> In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
>
> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
>
> (C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1).

Applying the statutory factors, we find from the record before us that this is a 28-year marriage between parties who are both 53 years old. There are no minor children in the home. Both parties are in good health except for Husband's high blood pressure and Wife's bilateral carpal tunnel syndrome. Neither party has separate assets, and the marital assets were divided approximately 50 - 50 by the Trial Court without objection on appeal. Over the most recent decade of this marriage, Husband maintained a very high standard of living involving vacations, hobbies, travel, frequent restaurant meals and the like, while Wife remained on the family farm and lived "simply," with her most expensive habit being the keeping of numerous farm and domestic animals. The record shows that Wife made significant contributions to the marriage as homemaker and set up housekeeping for the family at numerous different locations in keeping with Husband's career needs. While not determinative, it is also clear from the record that the Trial Court properly determined Husband to be the party at fault in this divorce.

As to the statutory factor requiring the court to assess the needs and earning capacities of the parties, the record shows that Husband's earnings for the five years immediately preceding trial were in excess of one million dollars and averaged almost $205,000 per year. During that entire five-year period, Wife earned less than $2,000. The record shows that she is ill-equipped to resume her former career as an Executive Secretary because she lacks any training or experience in using computers, and she has no interest in returning to that career. Although she has minimal experience as a waitress, she testified that she can no longer do heavy work due to bilateral carpal tunnel syndrome. Wife has worked on the family farm, but there, she employs a laborer to help with the chores. The farm has operated at a loss for each of the five years immediately prior to trial, and there is no evidence in the record to indicate that it has ever generated income or was ever intended to do so. Wife testified vaguely that she would like to become a counselor, but she had no specific plan and had no idea what kind of education or licensing would be required to accomplish this.

While all relevant factors mentioned above must be considered, need and the ability to pay are the critical factors in setting the amount of an alimony award. *Anderton*, 988 S.W.2d at 683. Discussing the purpose of alimony, this Court has held that:

> [t]he purpose of spousal support is to aid the disadvantaged spouse to
> become and remain self-sufficient and, when economic rehabilitation
> is not feasible, to mitigate the harsh economic realities of divorce.

*Id.* at 682. Applying these familiar principles of law, we find that economic rehabilitation is not feasible in this case, and therefore, the Trial Court properly awarded Wife alimony in futuro. We find no error in the Trial Court's determination as to the amount of alimony awarded to Wife. Accordingly, we modify the Judgment of the Trial Court to reflect that Wife shall receive $5,800 per month for 24 months from the date of the Trial Court's Judgment as alimony in futuro, and shall receive $4,800 per month thereafter as alimony in futuro.

Husband also argues that the Trial Court erred in awarding Wife's attorney fees of $10,000. Where one spouse demonstrates a financial inability to afford counsel, and where the other spouse has the ability to pay, the court may properly award attorney fees. *Houghland v. Houghland,* 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992); *Harwell v. Harwell,* 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980). Furthermore, the award of attorney fees is within the sound discretion of the Trial Court, and it will not be disturbed on appeal unless we find an abuse of that discretion. *Crabtree*, 16 S.W. 3d at 361. We find no such abuse of discretion. Accordingly, we affirm the Trial Court's award of Wife's attorney fees at trial. We hold, however, that the respective parties should bear the expense of their own attorney fees for this appeal.

### Conclusion

The judgment of the Trial Court is affirmed as modified, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this

Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellant, Robert Lewis Rabuck, and his surety.

_____
D. MICHAEL SWINEY, JUDGE