IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 20, 2001 Session

## PHILLIP OWEN PAGE v. LUCILLE GREER PAGE

**Direct Appeal from the Circuit Court for Shelby County**
**No. 160522     John R. McCarroll, Jr., Judge**

_____

**No.  W2000-01314-COA-R3-CV - Filed May 15, 2001**

_____

Holly Kirby Lillard, J., concurring in part and dissenting in part.

While I concur with most of the majority decision, I must respectfully dissent from the majority's affirmation of the trial court's denial of Wife's request for alimony in futuro.  This case illustrates a classic situation with which trial courts now have difficulty dealing, in light of our Supreme Court's decision in *Crabtree v. Crabtree*, 16 S.W.3d 356 (Tenn. 2000).

In this case, Wife was a homemaker for the last nineteen years of the parties' twenty-five year marriage.  Husband had been employed by Helena Chemical Company for twenty-seven years and was a National Sales Manager at the time of the divorce, making, including bonus, roughly $140,000 per year, sometimes more.  Both parties were 49 years old.  The divorce was awarded to Wife, based on Husband's inappropriate marital conduct.

To her credit, Wife had enrolled at a local technical school to try to acquire computer skills in order to obtain some type of employment.  At trial, the testimony most favorable to Husband regarding Wife's prospects for employment was Husband's own testimony, stating his opinion that Helena Chemical Company had jobs available for which Wife could be hired at the conclusion of her training which would pay between $25,000 and $40,000 per year.

Under the majority Opinion, Wife receives rehabilitative alimony and alimony in solido for a period of five years; after that, she receives nothing.  Consequently, at the end of the five-year period, if all goes according to Husband's optimistic prediction for Wife's future, Wife will be earning between $25,000 and $40,000 in an entry-level job, while Husband will retain his entire earnings, in excess of $140,000 per year.

The Supreme Court's decision in *Crabtree* appears to force the trial court to award rehabilitative alimony, and no alimony in futuro, if rehabilitation is feasible to any degree. *Crabtree* states:

> If an award of rehabilitative alimony is justified by the parties' circumstances,
> a trial court initially should award rehabilitative alimony only.  An award of

rehabilitative alimony pursuant to Tenn. Code Ann. § 36-5-101 must be predicated upon a finding that the recipient can be economically rehabilitated. Once awarded, rehabilitative alimony may be modified if the recipient's prospects for economic rehabilitation materially change. If rehabilitation is not feasible, the trial court may then make an award of alimony in futuro. Accordingly, a concurrent award of both types of alimony is inconsistent. At the time of the decree, a trial court must necessarily find that the recipient of alimony either can be or cannot be rehabilitated although that determination is subject to later modification. Allowing concurrent awards of alimony in futuro and rehabilitative alimony would require a trial court to engage in an act of clairvoyance. The trial court would not only be required to anticipate the duration necessary for rehabilitation but would also be required to anticipate the future needs of a spouse who, it has been determined can be rehabilitated.

*Crabtree*, 16 S.W.3d at 360. However, in this case, it does not take a clairvoyant to foresee that, at the end of the five-year period, Husband will be reaping the financial rewards of the parties' joint investment in his twenty-seven year career as an executive, and Wife will be working in an entry-level job earning subsistence-level compensation.

*Crabtree* leaves the trial court ill-equipped to deal with this classic situation, in which one spouse pursues a high-powered career while the other contributes to the marriage as a stay-at-home parent and homemaker. Of course the homemaker spouse should be encouraged to rehabilitate to the extent possible and obtain some type of employment. Rarely is such a homemaker spouse going to be able to rehabilitate to a degree that she can support herself in a manner that bears any resemblance to the parties' lifestyle during the marriage. However, under *Crabtree*, if rehabilitation is even minimally feasible, alimony in futuro is foreclosed.

The Court in *Crabtree* states that alimony in futuro may later be awarded if it turns out that rehabilitation "is not feasible." *Id.* at 360. This is little comfort to Wife in this situation. If she manages to overcome the obvious obstacles in the job market for a fifty-year old woman who has been unemployed for twenty years and obtains employment paying $25,000 per year, she will be deemed "rehabilitated," making approximately one-sixth of Husband's earnings, and she will never be able to obtain alimony in futuro.

The alimony statutes must provide a method for a trial court to make a fair alimony award to a spouse who has been out of the workforce for many years and who can rehabilitate enough to enter the workforce but earn at best a subsistence living, while the breadwinner spouse continues to enjoy an affluent lifestyle. I see nothing inconsistent, in the statutes or otherwise, about awarding both rehabilitative alimony and alimony in futuro in a situation such as this. If this is not possible, the trial court should be permitted to award alimony in futuro which "steps down" after a reasonable period for rehabilitation. Moreover, the term "rehabilitation" must be viewed against the background of the parties' standard of living prior to the divorce:

We believe this means that in marriages of long duration where a spouse is economically disadvantaged *vis-a-vis* the other spouse, the parties' standard of living should be the measuring stick by which and against which a court determines whether or not an individual can be rehabilitated. . . . . This is not to say the court must find that the requesting spouse can be rehabilitated to the exact standard of living that he or she enjoyed during the marriage. That standard of living is simply a measuring stick against which the rehabilitation analysis is made. In the final analysis, the court should determine whether the evidence preponderates that the requesting spouse can be restored to a standard that is reasonable *when compared to the parties' pre-divorce standard.*

***Robertson v. Robertson***, 2000 WL 121314 (Tenn. Ct. App., Aug. 25, 2000) at *2 (perm. to app. granted March 12, 2001.

I believe that the current status of the law on this issue does a disservice to spouses who find themselves divorced after spending many years contributing to the marriage as a stay-at-home parent and homemaker. If the law is not clarified by our Supreme Court in a manner which permits a trial court to reach a just result in such a situation, the problem should be remedied by our Legislature. On this basis, I respectfully dissent.

HOLLY KIRBY LILLARD, J.

3