IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 9, 2001 Session

**SHERRY ANN HALL v. MARK STEPHEN HALL**

**An Appeal from the Circuit Court for Rutherford County
No. 99DR-347      Royce Taylor, Judge**

_____

**No. M2000-01788-COA-R3-CV - Filed April 19, 2002**

_____

This is a divorce case.  The wife was awarded more than half of the martial assets and alimony in futuro in amounts that would step down after three years and end when the wife reaches retirement age.  In addition, the trial court awarded the wife, in lieu of attorney's fees, ownership in a life insurance policy on the husband's life.  The husband now appeals the trial court's division of marital property, the award of alimony in futuro, and the award relating to attorney's fees.  We affirm the trial court's division of marital property and the award relating to attorney's fees, but we reverse the trial court's award of alimony in futuro and instead award rehabilitative alimony.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed in Part,
Reversed in Part, and Remanded**

HOLLY K. LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Mark Stephen Hall.

Janet D. Powell, Murfreesboro, Tennessee, for the appellee, Sherry Ann Hall.

**OPINION**

This is a divorce case.  Appellant Mark Stephen Hall ("Husband") and appellee Sherry Ann Hall ("Wife") were married on February 26, 1972, in Louisiana.  Shortly thereafter, the couple moved to Texas for about one year where Husband continued his career in the Air Force at Laughlin Air Force Base.  During that time, Wife did not work outside the home.  Thereafter, the parties moved to Louisiana, where Husband began working for BellSouth as an electronics technician.  Husband earned additional income by opening a gun shop and working as a soccer referee.

After the couple moved back to Louisiana, Wife began working at a shipyard as a payroll clerk.  Shortly thereafter, she quit working due to complications with her pregnancy with the parties'

first child, a son. Two years later, Wife gave birth to a second child, a daughter. When the daughter was eighteen months old, Wife returned to work at the shipyard, working approximately thirty hours a week. The shipyard eventually went out of business, at which time Wife went to work as a temporary secretary. She also worked periodically as a substitute teacher at her children's school. While in Louisiana, Wife took some classes at a local university to pursue her degree in special education.

In 1987, Husband was transferred through his employment at BellSouth to Murfreesboro, Tennessee. After moving to Tennessee, Wife waited about a year before resuming college classes at Middle Tennessee State University. In the meantime, she worked for three years in the Rutherford County School System as a substitute teacher, earning minimum wage. After about two and one-half years, as a substitute teacher, she became an educational assistant. Husband completed courses at the university in Louisiana and at Middle Tennessee State University, majoring in computer science, but he never earned a college degree. BellSouth reimbursed him for his college tuition. Wife paid for her own educational pursuits, at times borrowing money from her aunt to help pay tuition.

In 1993, Wife left her job as an educational assistant to work at Bedford Trucking. She later left the trucking company and worked on a part-time basis at a doctor's office for approximately five months. After that, she went back to work for the school system as an educational assistant, working thirty-five (35) hours per week and earning $9.27 per hour. Prior to the divorce, however, Wife was informed that her position as an educational assistant would be terminated within six weeks of the 2000-2001 school year due to federal funding cutbacks.

On March 12, 1999, Wife filed a petition for divorce based on Husband's inappropriate marital conduct. Wife also requested that the trial court grant her alimony pendent lite during the course of the proceedings. By report of a special master, Husband was ordered to pay $708 per month in alimony pendente lite, and was also ordered to pay the parties' monthly house note of $646 during the pendency of the case.

The trial below was conducted on May 25, 2000. In an order filed on June 15, 2000, the trial court granted Wife the divorce. The trial court held that Wife was incapable of being rehabilitated and awarded her alimony in futuro of $1,000 per month from September 1, 2000, through May 1, 2003, and $600 per month from June 1, 2003, through May 1, 2015, when Wife reaches social security retirement age. With respect to the division of marital property, the trial court ordered that the marital residence be sold, the proceeds of which were to be used to pay off the mortgage and other marital debts. Because the marital debt exceeded the equity in the house, the parties ultimately received no proceeds from the sale. With regard to the other marital property, Wife was awarded approximately $48,624.70 in marital assets, which was approximately 55.7% of the total marital assets. Husband was awarded approximately $38,645.96 in marital assets, or approximately 44.3% of the total. Finally, in lieu of attorney fees, the trial court awarded Wife "all interest including but not limited to the cash value [approximately $15,500] in the Jefferson Pilot life insurance policy insuring the life of Mark Stephan [sic] Hall, Sr., and the ownership of said policy shall be transferred to the name of [Wife]." The trial court also stated that Wife would be obligated to continue

payments on the policy, but if Husband were to be found otherwise uninsurable, he would be obligated to pay the cost of the policy. Husband now appeals from that order.

Husband argues on appeal that the trial court's division of the marital property was inequitable. He argues further that the trial court erred in finding Wife incapable of rehabilitation, and in awarding alimony in futuro rather than rehabilitative alimony. Finally, Husband claims that the trial court erred in awarding Wife the interest in the life insurance policy in lieu of attorney's fees.

The trial court has substantial discretion in dividing the marital property, and its distribution will be given "great weight" on appeal. *See Ford v. Ford*, 952 S.W.2d 824, 825 (Tenn. Ct. App. 1996) (quoting *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991)). Accordingly, its division of the marital estate is presumed to be correct unless the evidence preponderates otherwise. *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984); Tenn. R. App. P. 13(d).

Husband first argues that the trial court's division of the marital property was inequitable under the circumstances in this case. The division of marital property in divorce cases is governed by Tennessee Code Annotated § 36-4-121, which generally provides that the trial court is to divide the property equitably without regard to fault.[1] In dividing the marital property, the trial court considered the relevant factors listed in Tennessee Code Annotated § 36-4-121(c):

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the

---

[1] Tennessee Code Annotated § 36-4-121(a)(1) (2001) reads in pertinent part:

Distribution of marital property. – (a)(1) In all actions for divorce or legal separation, the court having jurisdiction thereof may, upon request of either party, and prior to any determination as to whether it is appropriate to order the support and maintenance of one (1) party by the other, equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just.

contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2001). Though their calculations differ slightly, the parties agree that Wife received approximately 55.7% of the total marital assets and that Husband received approximately 44.3%.[2] Husband contends that the trial court's property division was inequitable considering the above-enumerated factors.

After a careful review of the record, we find that the trial court did not abuse its discretion in dividing the marital property in this case. At the time of their divorce, the parties were both fifty-one (51) years of age, and they had been married for over twenty-seven (27) years. Though Wife suffers from minor heath problems, both parties enjoy relatively good health. Husband concedes that the parties have disparate earning capacities. At the time of the hearing below, Husband earned approximately $45,000 per year, and Wife had an annual income of about $14,000.[3] However, Wife has the potential to earn between $21,000 and $24,000 as a teacher after she earns her college degree. Although Wife's salary as a teacher will likely increase somewhat over time, she will not begin earning a full salary until approximately age 55, and the amount of increase in her salary is uncertain. It is undisputed that Wife did not work on a full-time basis during the marriage, and that she

---

[2]The difference can be accounted for by the fact that $8,175.20 in Husband's BellSouth stock was awarded to Wife and $4,741.46 was awarded to Husband. Also, the court awarded Wife the 1992 Ford Van ($3,770), the 1993 Honda ($1,675), John Deere Mower ($800), and a sewing machine ($300). The remainder of the property was divided evenly.

[3] According to the parties' 1999 W-2 statements and federal tax returns, Husband had gross earnings of $56,962.00 and Wife had earned $14,095.87. Husband quit working his extra jobs, however, and now claims that his earnings will cap at approximately $45,000 per year as long as he works for BellSouth. Wife has submitted no evidence that Husband is willfully underemployed.

contributed to the family primarily as a homemaker and a caretaker for the children. Considering these factors, we find that the trial court did not err in distributing the marital assets as it did, giving a small proportionate advantage to Wife. *See Ford*, 952 S.W.2d at 826-27 (affirming award to wife of 69% of marital assets when the husband had greater earning capacity and the wife had contributed to the marriage as a homemaker and mother).

Next, Husband contends that the trial court erred in awarding alimony in futuro rather than rehabilitative alimony. As noted above, the trial court awarded Wife alimony in futuro in the amount of $1,000 per month until May of 2003, and thereafter $600 per month until May of 2015 when Wife reaches social security retirement age.

The trial court is afforded substantial discretion in making decisions regarding spousal support. *Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994). In Tennessee, rehabilitative alimony is preferred over alimony in futuro in order to eliminate the dependency of one spouse on the other "and to relieve the parties of 'impediments incident to the dissolved marriage.'" *Crabtree v. Crabtree*, 16 S.W.3d 356, 358-59 (Tenn. 2000) (quoting *Self v. Self*, 861 S.W.2d 360, 361 (Tenn. 1993)). Tennessee Code Annotated § 36-5-101(d) provides in pertinent part:

> It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3).

Tenn. Code Ann. § 36-5-101(d)(1) (2001). The following factors should be considered by a trial court in determining the nature and amount of alimony to be awarded:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

> (C) The duration of the marriage;

> (D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1)(A) - (L) (2001). Because the statute reflects the legislative policy of eliminating spousal dependency, alimony in futuro should be awarded only when the trial court finds that "economic rehabilitation is not feasible and long-term support is necessary." *Crabtree*, 16 S.W.3d at 359 (quoting *Self*, 861 S.W.2d at 361).

In considering the statutory factors listed above, the trial court determined that "there is a relative economic disadvantage. [Husband] makes in excess of three times what [Wife] earns and can earn." The trial court then found that, although Wife was attempting to rehabilitate herself, "at her age [51] it's not feasible that she'll ever reach the earning capacity of [Husband]." On that basis, and because "just about every one" of the statutory factors applied in favor of Wife, the trial court awarded the stated amount of alimony in futuro, rather than rehabilitative alimony.

Husband argues that the evidence preponderates against the trial court's finding that Wife cannot be rehabilitated. He asserts that it is not necessary for Wife to reach the same earning capacity as Husband to be considered economically rehabilitated. *See Crabtree*, 16 S.W.3d at 360. Rather, under *Crabtree* she need only be able to achieve a reasonable income. Wife argues that there is no evidence in the record to support Husband's contention that she will be able to raise her

earning capacity to a reasonable level as compared to his earning capacity. She argues that, because she will be entering the workforce at age 55, her level of income will never be raised to a "reasonable level" as compared to the income of Husband.

Under the standard in *Crabtree*, we are compelled to conclude that the trial court erred in finding Wife incapable of rehabilitation. During the marriage, Wife consistently worked on a part-time basis, and is working toward earning her teaching degree. If Wife works as a teacher for the county system, she will earn a starting salary of $21,000 to $24,000 per year. Under *Crabtree*, when Wife's salary is compared to Husband's salary of $45,000, we must conclude that Wife can be rehabilitated in that her earning capacity can reach a reasonable level. *See Dempsey v. Dempsey*, No. M1998-00972-COA-R3-CV, 2000 Tenn. App. LEXIS 477, at *10 (Tenn. Ct. App. July 21, 2000) (finding that a trial court should determine whether the disadvantaged spouse can improve his or her earning capacity to a "reasonable" level); *but see Page v. Page*, No. W2000-01314-COA-R3-CV, 2001 Tenn. App. LEXIS 361, at *13 (Tenn. Ct. App. May 15, 2001) ("*Crabtree* appears to force the trial court to award rehabilitative alimony, and no alimony in futuro, if rehabilitative alimony is feasible to any degree." (Emphasis added.) (Lillard, J., concurring in part and dissenting in part)).

The *Crabtree* Court held that where "an award of rehabilitative alimony is justified by the parties' circumstances, a trial court initially should award rehabilitative alimony only. . . . Once awarded, rehabilitative alimony may be modified if the recipient's prospects for economic rehabilitation materially change." *Crabtree*, 16 S.W.3d at 360. Therefore, under *Crabtree*, because Wife is entitled to rehabilitative alimony, she cannot also receive alimony in futuro. We recognize that each of the statutory factors weigh in favor of Wife, particularly considering the duration of the marriage, the age of the parties, and the Husband's undisputed inappropriate marital conduct, but this result is compelled by the standard in *Crabtree*. Accordingly, we reverse the trial court's award of alimony in futuro and award Wife $1,000 per month in rehabilitative alimony for five years. This five-year income stream will help Wife with her expenses while she completes her college degree and for a reasonable time thereafter to assist her in making the transition into being financially self-sufficient. *See id.* at 361 (modifying award to enable wife to have a smooth transition from part-time to full-time employment).

Finally, Husband argues that the trial court erred in awarding Wife the cash value in a life insurance policy on his life worth approximately $15,500 in lieu of $11,326.50 in attorney's fees. Husband does not argue that Wife is not entitled to attorney's fees. Rather, he claims that Wife can afford to pay her attorney's fees by liquidating the $8,175.20 in BellSouth stock she received in the property division. Though sale of the stock would be insufficient to cover the total amount of attorney fees, Husband argues that the attorney fees charged to Wife were grossly excessive. Furthermore, Husband argues that the trial court had no basis on which to award Wife an asset wroth $15,500 to cover an $11,326.50 fee, where the value of the award exceeds the amount of the fee by

$4,173.50. Husband argues that "there is no support in Tennessee law for an award of attorney's fees that is greater than the amount of actual fees incurred." [4]

From a review of the record, we must conclude that the trial court's award was not an award of attorney's fees. Rather, the award appears to be an extension of the trial court's division of marital property, allowing the Wife to have sufficient assets out of which to pay her attorney's fees. This slight increase in Wife's proportion of assets does not alter our initial decision that the trial court properly exercised its discretion in dividing the marital property between these parties. For these reasons, and for the reasons we have discussed in affirming the court's initial division of marital property, we affirm the trial court's award of the cash value of the life insurance policy in lieu of attorney's fees.

In sum, we affirm the trial court's division of marital property and the award of the cash value of the life insurance policy. We reverse the trial court's award of alimony in futuro and award rehabilitative alimony to Wife in the amount of $1,000 per month for five years.

Accordingly, the decision of the trial court is affirmed in part and reversed in part as set forth above. The cause is remanded to the trial court for any further proceedings consistent with this Opinion. Costs are to be taxed equally to appellant, Mark Stephen Hall, and his surety, and appellee, Sherry Ann Hall, for which execution may issue if necessary.

_____
HOLLY K. LILLARD, JUDGE

---

[4] Husband argued to the trial court that the amount of Wife's fees were unreasonable because his fees were significantly less. Wife argued that, while excessive, a large portion of her fees were generated because of Husband's refusal to cooperate and abide by court orders. The trial court determined that Wife's attorney's fees were not unreasonable in light of the circumstances. From our review of the record, we cannot conclude that the evidence preponderates against that finding.