# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
February 10, 2003 Session

## SUSAN ELIZABETH CARROLL v. DAVID WILLIAM CARROLL

**Appeal from the Probate and Family Court for Cumberland County**
No. 13450    Steven C. Douglas, Judge

**FILED MARCH 31, 2003**

**No. E2002-01021-COA-R3-CV**

---

This is a divorce case. The only issues raised on appeal pertain to the trial court's award of alimony. That court awarded David William Carroll ("Husband") alimony of $2,000 per month "until the death of either party or his remarriage." Susan Elizabeth Carroll ("Wife") appeals, contending that Husband should be awarded rehabilitative alimony rather than alimony *in futuro*, and that, in any event, $2,000 per month "is excessive." We modify the trial court's award of alimony. As modified, the trial court's judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate and Family Court Affirmed as Modified; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Vivian E. Warner and Allison M. Barker, Crossville, Tennessee, for the appellant, Susan Elizabeth Carroll.

S. Roger York, Crossville, Tennessee, for the appellee, David William Carroll.

## OPINION

### I.

The parties were married on December 31, 1977. This was Husband's third marriage and Wife's second. No children were born to their union. Wife's daughter by a previous marriage lived with the parties early in their marriage.

Wife filed for divorce on July 17, 2001. Following a hearing on March 5, 2002, the trial court rendered its opinion from the bench. The court granted the parties a divorce on stipulated grounds; approved the parties' proposed division of property; and awarded Husband alimony *in*

*futuro* of $2,000 per month. The judgment of divorce incorporates a transcript of the trial court's oral remarks.

## II.

Our review of this non-jury case is *de novo* upon the record with a presumption of correctness as to the trial court's factual findings, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). The trial court's conclusions of law are not accorded the same deference. **Brumit v. Brumit**, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997).

## III.

Wife challenges the nature, duration, and amount of the trial court's alimony award. In reviewing this award, we are mindful of the well-established principle that a trial court has wide discretion on the subject of alimony. **Robertson v. Robertson**, 76 S.W.3d 337, 342 (Tenn. 2002). "'As a general matter, we are disinclined to alter a trial court's spousal support decision unless the court manifestly abused its discretion.'" **Id.** (quoting **Goodman v. Goodman**, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999)).

In determining whether, and to what extent, a party is entitled to spousal support, courts must consider the relevant statutory factors enumerated in Tenn. Code Ann. § 36-5-101(d)(1)(A)-(L) (Supp. 2002).[1] As the Supreme Court has pointed out on numerous occasions, Tenn. Code Ann. § 36-5-101(d)(1) expresses a clear preference for rehabilitative alimony. "It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance." *Id.*; *see Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000) ("the legislature has demonstrated a preference for an award of rehabilitative alimony to rehabilitate an economically disadvantaged spouse."); *see also Robertson*, 76 S.W.3d at 340 ("The prior concept

---

[1]These factors are as follows:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

-3-

of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony.").

The concept of rehabilitation and the legislature's preference for rehabilitative alimony, "whenever possible," have been explained by the Supreme Court in a number of ways. In the *Crabtree* case, the Supreme Court opined as follows:

> In *Self* [*v. Self*, 861 S.W.2d 360 (Tenn. 1993)], we held that § 36-5-101 reflects an obvious legislative policy to eliminate the dependency of one ex-spouse upon the other and to relieve the parties of "impediments incident to the dissolved marriage." *Id*. at 361.

*Id.* at 359. The Supreme Court has also referred to "the legislative purpose of encouraging divorced spouses to become self-sufficient." *Id.* at 360.

In the *Robertson* case, the Supreme Court, referring to an opinion of the Iowa Court of Appeals,[2] pointed out that "rehabilitative alimony may assist the disadvantaged spouse in obtaining further education or training." *Id.* at 340. However, it is clear from the *Robertson* opinion that rehabilitative alimony also may be appropriate where neither further education nor additional training is implicated by the facts:

> [Rehabilitative alimony] may also provide temporary income to support the disadvantaged spouse during the post-divorce economic adjustment.

*Id.* at 341. *See also* ***Isbell v. Isbell***, 816 S.W.2d 735, 739 (Tenn. 1991) ("The concept of rehabilitation in [Tenn. Code Ann. § 36-5-101] is the improvement of one's present and future capacity to function independently in society."); ***Loria v. Loria***, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997) (describing rehabilitative alimony as "temporary income during a period of adjustment and effort of the dependent spouse to become partially or totally self sufficient.").

IV.

Against this background, we now turn to the evidence in the instant case bearing on the trial court's decision to grant Husband alimony *in futuro* of $2,000 per month.

At the time of their marriage, both Husband and Wife were employed with Dana Corporation in Gibraltar, Michigan. Three years later, Wife was transferred to Toledo, Ohio, and Husband was

---

[2]*In re Marriage of Grauer*, 478 N.W.2d 83, 85 (Iowa Ct. App. 1991) ("Rehabilitative alimony serves to support an economically dependent spouse 'through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting.'").

laid off following the shutdown of the Gibraltar plant. Over the next seventeen years, Wife continued to receive promotions within the corporation, causing the parties to relocate five times. Throughout this time period, Husband was employed in many different capacities. His employment included work at or in construction, a nursing home, a newspaper insert factory, a fan company, and a shoe shop as a cobbler, just to name a few. When the parties relocated to Crossville, Tennessee in 1997, Husband worked for Auto Zone, a retail automotive parts company, for four to five months.

At the time of trial, Husband was voluntarily unemployed. He testified that he was both physically and mentally capable of working 40 hours per week. He further testified that he had the necessary work background to earn $8.00 per hour. Husband's sole income at the time of trial was a monthly pension of $164.09. Once Husband reaches the age of 59½,[3] he is eligible to receive, without penalty, distributions from his court-ordered share of Wife's 401(k) and Defined Benefit Plan. The proof at trial indicated that Husband, beginning at his age 59½, would be eligible to receive a minimum of $1,000 per month from the 401(k) and Defined Benefit Plan until he reaches the age of 77 or 78. In addition, Husband will receive approximately $881 per month in Social Security benefits at age 62, based upon his earnings as of the date of trial. The trial court found that Husband was capable of working 20 hours per week at a rate of $8.00 per hour, earning approximately $600 per month. *See* Tenn. Code Ann. § 36-5-101(d)(1)(A).

With respect to Wife, the court found that her net annual income was $62,067 and stated the following:

> She is at her highest earning level in her career to date and is capable of perhaps being promoted again, receiving not in 2002 but possibly additional bonuses, cost of living raises, company car, car phone/cell phone. [Dana Corporation] pay[s] for her insurance. [Dana Corporation] provide[s] her housing in North Carolina.

*See* Tenn. Code Ann. § 36-5-101(d)(1)(A).

While Husband initially submitted a list of expenses totaling $3,000, he reduced or eliminated some expenses at trial. After the trial court added $205 for some expenses that it concluded Husband had overlooked, Husband's projected monthly expenses totaled $2,760. Husband's monthly income, including his pension of $164.09 and the $600 per month from assumed part-time employment, amounts to $764.09. The trial court concluded that Husband's unfunded monthly need was $2,000. *See* Tenn. Code Ann. § 36-5-101(d)(1)(A).

---

[3]Husband's date of birth is October 14, 1944; he will be 59½ on April 14, 2004.

The trial court found that Husband had a high school education and that both parties had reached their highest level of education.[4]  There is no proof in the record that either party would benefit from further education or additional training.  *See* Tenn. Code Ann. § 36-5-101(d)(1)(B).

The parties were married for over 24 years; the trial court correctly noted that this was a marriage of long duration.  *See* Tenn. Code Ann. § 36-5-101(d)(1)(C).  At the time of the hearing below, Wife was 53 and Husband was 57.  *See* Tenn. Code Ann. § 36-5-101(d)(1)(D).  While Husband is blind in his right eye, the court found that this condition does not affect his ability to work and found that both parties were in good physical health.  *See* Tenn. Code Ann. § 36-5-101(d)(1)(E).  Factor (F) with respect to minor children is not implicated by the facts of this case.

The trial court approved the parties' property settlement.  Wife received the marital residence, subject to the mortgage indebtedness.  She agreed to pay Husband $30,000, which represented one-half of the equity the parties had in the residence.  Wife's 401(k), Defined Benefit Plan and 1,000 shares of Dana Corporation stock were divided equally between the parties, each receiving assets worth $202,195.  Husband received a 2001 Dodge Dakota pickup truck, valued at between $16,000 and $19,000, and a 1937 Ford show car, valued at $25,000.  In addition, Wife assumed the parties' credit card debt.  Finding that both parties would have assets in excess of $200,000, the trial court ordered each party to pay his/her own attorney's fees and one-half of the court costs.  *See* Tenn. Code Ann. § 36-5-101(d)(1)(G) & (H).

With respect to the parties' standard of living, the court below noted that "[n]either will be able to sustain the standard of living divorced that they've been able to sustain while they were married together."  *See* Tenn. Code Ann. § 36-5-101(d)(1)(I).  The trial court found that Wife had made "the majority of the financial contributions to the marriage," while Husband had contributed in other ways, such as making "concessions to [Wife's] job, being willing to pick up and move as [Wife] got promoted and transferred . . . ."  *See* Tenn. Code Ann. § 36-5-101(d)(1)(J).

The relative fault of the parties was not an issue in this case.  *See* Tenn. Code Ann. § 36-5-101(d)(1)(K).  Finally, the court stated, "[t]he parties stipulated that he has a need, and they stipulated that [Wife] has an ability to pay, and so I find that [Husband] is not capable of being rehabilitated at this point."  *See* Tenn. Code Ann. § 36-5-101(d)(1)(L).

V.

We find the evidence preponderates against the trial court's finding that Husband cannot be rehabilitated.  He has a high school education; has been employed in various capacities over the past twenty years; has, according to the trial court, the ability to earn a minimum of $600 per month, and

---

[4]The record does not reveal the level of Wife's educational achievement.

possibly as much as $1,386 per month, based on Husband's own testimony;[5] is in good physical health as he approaches his 60s; receives a monthly pension of approximately $164 and will be eligible to receive a minimum of $1,000 per month from Wife's 401(k) and Defined Benefit Plan in just over one year; and has received 500 shares of Dana Corporation stock, valued at $10,000, as well as other assets, which assets, in the aggregate, total in excess of $200,000.

Accordingly, we find that Husband can be economically rehabilitated with some assistance from Wife. We therefore change, prospectively, the trial court's award of $2,000 per month alimony *in futuro* to an award of rehabilitative alimony. Beginning with and for the month of April, 2003, and continuing to April, 2004, inclusive, Wife will pay Husband $1,500 per month. Beginning with and for the month of May, 2004,[6] Wife's rehabilitative alimony obligation will decrease to $500 per month and continue at that level through the full alimony payment due for the month of October 2006, the month during which Husband will reach the age of 62 and become eligible for old-age Social Security benefits. Husband's rehabilitative alimony will cease after the full payment made in advance for the month of October, 2006. We decline Wife's request to modify the trial court-imposed alimony payments for the month of March, 2003, and prior months, although we do change the designation of such payments from *in futuro* to rehabilitative.

We find that the rehabilitative award directed by us will enable Husband "to become partially or totally self sufficient." *See* **Loria**, 952 S.W.2d at 838. Further, this award will give Husband the temporary support he needs "during the post-divorce economic adjustment." *See* **Robertson**, 76 S.W.3d at 341. He can be rehabilitated as that concept has been explained by the Supreme Court.

## VI.

The trial court's alimony award is modified as set forth in this opinion. As modified, the trial court's judgment is affirmed. This case is remanded for enforcement of the trial court's judgment, as modified by this opinion, and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellee, David William Carroll.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[5]As previously noted, Husband testified that he was capable of working 40 hours a week and had the training and experience to earn $8 per hour. This testimony leads to a calculation that results in a gross income of $1,386 per month.

[6]The month after the month in which Husband attains the age of 59½ .