IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 19, 2001 Session

## PATSY HILL OAKLEY v. JAMES SPENCER OAKLEY

**Direct Appeal from the Circuit Court for Shelby County**
**No. 157480 R.D.     George H. Brown, Jr., Judge**

_____

**No. W2000-02033-COA-R3-CV - Filed August 10, 2001**

_____

This appeal arises from a divorce action. Husband and Wife divorced after 22 years of marriage. Both had received property by bequest during the marriage. Husband had received stocks and securities, real property, and Company, which he owned and operated. Wife received property which she subsequently sold. The proceeds of these sales were deposited in a separate investment account after first passing through a marital checking account and were later used to buy Condo. The trial court specifically found that Wife had not substantially contributed to appreciation of stocks and securities, but awarded her 25% of their appreciation. The appreciation of Husband's real property was found to be marital property, as well as the entire value of Company. Wife's Condo was found to be separate property. We affirm in part, reverse in part, modify and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed in part; Reversed in part; Modified; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

David E. Caywood and Cynthia L. McLendon, Memphis, Tennessee, for the appellant, James Spencer Oakley.

James O. Parker and Sam Blaiss, Memphis, Tennessee, for the appellee, Patsy Hill Oakley.

### OPINION

In 1997, Patsy Oakley filed a Complaint for Divorce against James Oakley, her husband of twenty-two years. Ms. Oakley had been a homemaker for the duration of the marriage, though she was involved in the buying and selling of antiques on an irregular basis. Mr. Oakley was the owner and operator of Oakley Frames, a framing business. The couple had two children, one being a minor at the time of the divorce.

At the time the Complaint for Divorce was filed, the couple owned various assets. In addition to Oakley Frames, Mr. Oakley owned a substantial stock portfolio and two residential properties. Mr. Oakley had inherited most of these assets in 1986 upon the death of his mother.[1] Ms. Oakley owned a condominium in Florida. This property had been purchased in July, 1997, with money from a Merrill Lynch account. This account contained funds Ms. Oakley had inherited from her mother and aunt. However, Ms. Oakley had made a down payment for her condo from Merrill Lynch funds which she initially placed into a joint marital checking account.

The trial court found that the appreciation of Mr. Oakley's two residential properties and Oakley Framers were marital property. In addition, the court found Ms. Oakley was entitled to 25% of the appreciation of her husband's stock portfolio. Ms. Oakley was awarded her Florida condominium as separate property. In addition, Ms. Oakley was awarded $375 per month in alimony *in futuro*, $1000 per month for 48 months as rehabilitative alimony, and $65,000 in alimony *in solido*. This appeal followed.

The issues, as we perceive them, are as follows:

I.      Did the trial court err in awarding Ms. Oakley both alimony *in futuro*, rehabilitative alimony and alimony *in solido* of $65,000?

II.     Did the trial court err in its division of marital property through its award to Ms. Oakley of 25% of Mr. Oakley's stocks and securities, its classification of the appreciation of several real properties in Memphis and Oakley Framers in its entirety as marital property, and its finding that a Florida condominium recently purchased by Ms. Oakley was separate property?

To the extent that these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. *See* Tenn. R. App. P. 13(d). Accordingly, we may not reverse the court's factual findings unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); Tenn. R. App. P. 13(d). With respect to the court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); Tenn. R. App. P. 13(d).

**Alimony Award**

If an award of rehabilitative alimony is justified by the parties' circumstances, a trial court initially should award rehabilitative alimony only. An award of rehabilitative alimony pursuant to Tenn. Code Ann. § 36-5-101 must be

---

[1]Mr. Oakley's mother gifted Oakley Frames to him six months before her death.

predicated upon a finding that the recipient can be economically rehabilitated. Once awarded, rehabilitative alimony may be modified if the recipient's prospects for economic rehabilitation materially change. If rehabilitation is not feasible, the trial court may then make an award of alimony in futuro. Accordingly, a concurrent award of both types of alimony is inconsistent. At the time of the decree, a trial court must necessarily find that the recipient of alimony either can be or cannot be rehabilitated although that determination is subject to later modification. Allowing concurrent awards of alimony in futuro and rehabilitative alimony would require a trial court to engage in an act of clairvoyance. The trial court would not only be required to anticipate the duration necessary for rehabilitation but would also be required to anticipate the future needs of a spouse who, it has been determined, can be rehabilitated.

*Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).

In this case, Ms. Oakley was awarded both alimony *in futuro* and rehabilitative alimony. Clearly, as stated in *Crabtree*, these awards are inconsistent with each other. As the trial court found that Ms. Oakley could be rehabilitated, the court erred when it awarded Ms. Oakley alimony *in futuro*. However, it is clear from our review of the record that Ms. Oakley lacks any health insurance under the divorce decree. Ms. Oakley has suggested that the trial court's award of alimony *in futuro* was most likely intended to provide such health insurance as Ms. Oakley testified during the trial that $375 was the cost "[f]or health insurance."[2]

Upon our review of the record, we agree. An award for health insurance is specifically allowed under section 36-5-101(f)(1) of the Tennessee Code which states: "[t]he court may also direct a party to pay the premiums for insurance insuring the health care costs of the other party." Tenn. Code Ann. § 36-5-101(f)(1) (Supp. 2000). Taking this statute and the situation of the parties into account, we hereby reverse the trial court's award of alimony *in futuro*. Instead, we modify the trial court's award of rehabilitative alimony upward by the amount of $375 per month to reflect the costs of Ms. Oakley's health insurance. This portion of the rehabilitative alimony award will continue until Ms. Oakley becomes eligible for Medicare or until such time as Ms. Oakley is able to obtain health insurance through her employment.

Mr. Oakley has also argued that the trial court erred in awarding Ms. Oakley alimony *in solido*. However, "[b]oth in terms of logic and the purposes of alimony, we think it clear that alimony *in solido* is not inconsistent with a concurrent award of rehabilitative alimony." *Burlew v. Burlew*, 40 S.W.3d 465, 472 (Tenn. 2001). In addition, "[p]rovided that the trial court considers the purposes of alimony . . . and the specific factors listed in the statute, Tenn. Code Ann. § 36-5-101(d), it has wide discretion in determining the appropriate award." *Id.* (citing *Crabtree,* 16 S.W.3d at 360). Upon our review of the record, we cannot state that the trial court

---

[2]Mr. Oakley did not dispute this amount.

has abused its wide discretion in this matter. As a result, the trial court's award of alimony *in solido* in the amount of $65,000 to Ms. Oakley is hereby affirmed.

## Marital Property

Section 36-4-121(b)(1) of the Tennessee Code states:

(A)"Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. In the case of a complaint for legal separation, the court may make a final disposition of the marital property either at the time of entering a order of legal separation or at the time of entering a final divorce decree, if any. If the marital property is divided as part of the order of legal separation, any property acquired by a spouse thereafter is deemed separate property of that spouse. All marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property.

(B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

(C) "Marital property" includes recovery in personal injury, workers' compensation, social security disability actions, and other similar actions for the following: wages lost during the marriage, reimbursement for medical bills incurred and paid with marital property, and property damage to marital property.

(D) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

Tenn Code Ann. § 36-4-121(b)(1)(Supp. 2000), *as amended by* 2001 Tenn. Pub. Acts 274.

## A. Award of Stocks and Securities

It is undisputed by the parties that the stocks and securities under dispute in this case were Mr. Oakley's separate property.[3] In addition, the parties agree that neither party directly contributed to the increase in value of these securities. The trial court agreed, specifically finding that these stocks and securities had appreciated due to market forces "not from any appreciable contribution by Ms. Oakley," and were "separate property that [had] appreciated in value." Even after making these findings however, the trial court still awarded Ms. Oakley twenty-five percent of the securities' appreciation. This award was in error. The trial court found that these securities were separate property in which Ms. Oakley had made no appreciable contribution. Thus, under section 36-4-121(b)(1) of the Tennessee Code, Ms. Oakley was not entitled to any portion of their appreciation. As a result, we hereby reverse the trial court's award to Ms. Oakley of twenty-five percent of Mr. Oakley's separate stocks and securities.

## B. Real Properties in Memphis

Whether a spouse has made a substantial contribution to the preservation and appreciation of the other spouse's separate property is a question of fact. Substantial contributions are not limited to direct contributions but also include indirect contributions such as "homemaker, wage earner, parent or family financial manager." Tenn. Code Ann. § 36-4-121(b)(1)(C). A spouse's contributions must be real and significant in order to be substantial. However, they need not be monetarily commensurate to the appreciation in the separate property's value, nor must they relate directly to the separate property at issue. *Brown v. Brown*, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994).

*Wright-Miller v. Miller*, 984 S.W.2d 936, 943-44 (Tenn. Ct. App. 1998).

Unlike its findings about Mr. Oakley's securities, the trial court made no specific determination that Ms. Oakley did not contribute to the preservation and appreciation of Mr. Oakley's real property in Memphis. Through its ruling that the appreciation of these properties was marital property, the trial court, by necessity, found that Ms. Oakley did contribute to their preservation and appreciation. As the trial court's ruling that the appreciation is marital property is a finding of fact, it may only be reversed by this court if it is contrary to the preponderance of the evidence. Upon our review of the record, we cannot say that this finding is contrary to the preponderance of the evidence, and thus we affirm the trial court's determination that the appreciation of Mr. Oakley's real property in Memphis was marital property.

---

[3]Mr. Oakley inherited these stocks after his mother's death.

## C. Oakley Framers

The trial court found that Oakley Framers was separate property of Mr. Oakley. However, the trial court awarded Mr. Oakley only seventy-five percent of the total value of Oakley Framers, finding that Ms. Oakley had made a substantial contribution to its preservation and appreciation. Mr. Oakley argues that Ms. Oakley did not make such contributions either through working at the business or as a homemaker and parent. As such, he asks this court to reverse the trial court's decision in this matter. As stated above, "[w]hether a spouse has made a substantial contribution to the preservation and appreciation of the other spouse's separate property is a question of fact." *Id.* Thus, we may not reverse the trial court's decision on this matter unless it is contrary to the preponderance of the evidence. Upon our review, we cannot say that the trial court's finding that Ms. Oakley made a substantial contribution to the preservation and appreciation of Oakley Framers is contrary to the preponderance of the evidence.[4]

However, "any *increase in value* during the marriage of, property determined to be separate property . . . [can be considered marital property only] if each party substantially contributed to its preservation and appreciation." Tenn Code Ann. § 36-4-121(b)(1)(B) (Supp. 2000) (emphasis added). Thus, it is clear that Ms. Oakley is entitled only to the *increase in value* of Oakley Framers from the time Mr. Oakley received the business. The trial court was in error through its determination that the entire value of Oakley Framers was marital property. Only the appreciation of Oakley Framers during the marriage was marital property that could be properly divided by the court.

Upon reviewing the record before us, we cannot determine the initial value of Oakley Framers at the time it became Mr. Oakley's property.[5] As such, we are unable to determine the exact amount which Oakley Framers appreciated during the marriage. As a result, we hereby reverse the trial court's finding that the entire value of Oakley Framers was marital property and remand to the trial court for determination of the amount of the appreciation during the marriage. This appreciation is the only part of the total value of Oakley Framers that should be used in the division of marital property.

---

[4]We also note that Mr. Oakley has questioned Ms. Oakley's abilities as a homemaker, finding such abilities to be somewhat lacking. However, a substantial contribution can also be made while acting as a parent. Ms. Oakley helped to raise the couple's two children during the marriage. As Mr. Oakley agreed to joint custody of his minor children, with Ms. Oakley having physical custody and final decision making authority, we feel that he must not question Ms. Oakley's parenting abilities. Under Tennessee law, parenting contributions alone can be considered a substantial contribution to the preservation and appreciation of separate property.

[5]It is clear from the record that Oakley Framers had some value at the time Mr. Oakley received it, including inventory and machines.

## D. Florida Condominium

Upon our review of the record, we note that the trial court specifically found that Ms. Oakley's Florida condominium was separate property. For the reasons already discussed above, this court may not reverse the court's factual findings unless they are contrary to the preponderance of the evidence. Upon our review of the record, we cannot state that the trial court's determination in this matter is contrary to the preponderance of the evidence. As a result, we hereby affirm the trial court's finding that Ms. Oakley's Florida condominium is separate property.

## Conclusion

In summary, we reverse the award of alimony *in futuro*, modify the rehabilitative alimony, affirm the alimony *in solido*, reverse the trial court's decision to award Wife a portion of Husband's separate property consisting of stocks and securities, affirm the decision that the increase in the real property is marital property, affirm the determination that the Florida condo is Wife's separate property and affirm the decision that Wife made a substantial contribution to any increase in the value of the business. On remand, a determination must be made as to the value of the business at the time Husband acquired it. This cause is remanded to the trial court for a division of marital property in accordance with this opinion.

Costs on appeal are taxed equally to appellant, James Spencer Oakley, and appellee, Patsy Hill Oakley, and their sureties, for which execution may issue if necessary.

_____

DAVID R. FARMER, JUDGE