IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 27, 2001 Session

## MELONEY GAIL CARR (CAMPBELL) v. GRADY LEONIAL CARR, III

**Appeal from the Chancery Court for Haywood County**
**No. 12031     George R. Ellis, Chancellor**

---

**No. W2000-02420-COA-R3-CV - Filed October 3, 2001**

---

This is a child custody case. The parties were separated in February 2000 and the father was awarded temporary custody of the parties' two minor children. After the trial, the mother was granted the divorce, but custody of the two children remained with the father. The father was required to pay rehabilitative alimony on the condition that the mother enroll in EMT classes. The mother appeals, asserting that the trial erred in denying a continuance when several of the mother's witnesses were unavailable to testify at the hearing, in awarding custody to the father, in making the rehabilitative alimony conditional on the mother enrolling in EMT classes and in the division of marital property. We reverse the award of custody to the father, modify the order on rehabilitative alimony, modify the division of marital property, and remand to the trial court to determine issues relating to child support.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, Modified and Remanded**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which J. ALAN E. HIGHERS, J., and DAVID R. FARMER, joined.

Steven R. Walker, Memphis, Tennessee, for the appellant, Meloney Gail Carr.

Didi Christie, Brownsville, Tennessee, for the appellee, Grady Leonial Carr, III.

**OPINION**

This is a child custody case.[1] This case arises from the divorce of Appellant, Meloney Carr (now Campbell) (hereinafter "Mother"), and Appellee, Grady Carr (hereinafter "Father"). The parties

---

[1]There is no transcript of the proceedings below. The record on appeal includes a Statement of the Evidence, timely filed by counsel for Mother. The Statement of the Evidence was not disputed by Father, and not acted upon by the trial judge. Consequently, under Rule 24(f) of the Tennessee Rules of Appellate Procedure, the Statement of Evidence is deemed approved.

were married in January 1994, and had two children, Britney (born February 13, 1994) and Grady (born November 12, 1996).

Prior to the parties' separation, the family lived in Haywood County, Tennessee. Father was employed by a railroad in a job that at times required him to be away from home overnight. During the marriage, Mother was not employed outside the home, but instead stayed at home with the parties' children, by agreement of the parties. Several members of Father's extended family live in Haywood County, while members of Mother's extended family live in Desoto County, Mississippi. It is undisputed that Mother was the children's primary caregiver.

On January 2, 2000, Mother moved out of the marital home, taking with her the parties' two children. Mother was unemployed and without means of support; she and the children moved into her sister's home in Mississippi. Father remained in the marital home in Haywood County, Tennessee.

On February 4, 2000, Mother filed for divorce alleging both irreconcilable differences and inappropriate marital conduct. In the Complaint, Mother alleged that Father had recently "threatened to beat and kill her, as well as, take the children to where she would never see them again." Mother sought a restraining order against Father, which was granted. Father contested the divorce, denied the allegations of inappropriate marital conduct, and sought temporary custody of the children, asserting that he could provide a more stable environment and noting that he had the support of his extended family in Haywood County. He sought to have the temporary restraining order dissolved.

After a hearing, the trial court awarded temporary custody of the children to Father, provided that the paternal grandmother move into the marital home with Father and that the children not be exposed to alcoholic beverages. The temporary restraining order against Father remained in place.

The divorce action was heard on May 22, 2000. Mother sought to present testimony from Jennifer Jackson to establish that Father had had a lengthy affair with Jackson, and also to establish Father's temper, propensity to violence and his abuse of alcohol.[2] However, the day before the hearing, Jackson suffered an accident and was unavailable to testify. On the date of the hearing, two other persons Mother intended to call as witnesses had not yet been served with subpoenas. Mother's attorney sought a continuance. The trial judge called the attorneys for the parties into his chambers to discuss the continuance; the attorneys agreed that the unavailable witnesses's testimony would be cumulative to the other testimony offered by Mother and would primarily go to the grounds for divorce and not to custody. After Father stipulated to the affair and to the grounds for divorce, the trial judge denied the continuance.

---

[2]Affidavit of Jennifer Jackson. In her affidavit, Jackson asserts that Father was an excessive drinker. She states that she witnessed him lose his temper on many occasions and that it was almost routine for him to throw a plate or glass at her.

Mother testified at the outset of the hearing. She testified that Father worked for a railroad, and that his work required him at times to be away overnight. Mother said that she had not worked for approximately the last eight years. She said that, when the parties married, she quit school at Father's request. She had discussed with Father the possibility of returning to school to become an EMT. She asserted that Father told her that she was supposed to be a housewife and take care of the children, that she could not make it in school because she was stupid, that she would never amount to anything, and that she would only be a housewife who depended on someone else to take care of her. Mother said that, since the parties' separation, it had been hard to find a job. She said that two temporary employment agencies had indicated that they could find her temporary employment at $8.00 per hour.

Mother described Father's alcohol abuse. She said that Father drank almost daily, that he would begin drinking Wild Turkey bourbon in the morning and continue until supper. On his days off, she said, Father would be out with his friends until the early morning hours.

Mother also described Father's physical abuse of her. She testified that, immediately after she had knee surgery, Father threw and pushed her across a room and into a fireplace, causing her to hit her head. On more than one occasion, she asserted, Father had held her down, sitting on top of her, and poked her in the chest hard enough to leave visible bruises. She said that once Father threw his glass of bourbon at her because she did not refill his glass and told him he had been drinking too much. The glass almost hit their daughter, Britney, who had been standing next to Mother.

Mother testified that Father frequently lost his temper with the parties' children over small things. She said that if Father were sleeping and the children's play woke him, he would whip them with a belt. She asserted that Father whipped the children frequently, and excessively hard. She said that he had whipped Britney so hard that it left a deep bruise on her back, and that he had recently whipped their son hard enough to leave visible marks on his bottom.

At the time of trial, Mother lived in her parents' home, with four bedrooms and two baths. Mother's mother, Mrs. Walker, testified, corroborating Mother's testimony that Father's discipline had left visible bruises on the parties' son. Mrs. Walker said that, when the children visited Mother, they did not want to return to Father.

Mother's cousin, Adam Walker, also testified. He said that he rode with Mother to Father's home to pick up the children. When they were picked up, Walker asserted, the children were unclean and hungry and Britney's hair was "a mess." He said that the children were happy to leave Father and cried when they had to return to him. Walker described an incident regarding a puppy Father had gotten for Mother during the parties' separation. In the children's presence, Walker said, Father yelled at Mother that she "had better take the damn dog or he would get rid of it," and then picked the puppy up by the scruff of the neck and threw it into Walker's arms.

Britney's kindergarten teacher, Tracy Riddle, also testified at the hearing. Ms. Riddle testified that, when Mother was the children's primary caregiver, Britney was always neatly dressed in matching outfits, with her hair nicely fixed with a bow in it. Since Father had been awarded temporary custody, she said, Britney was never dressed as nicely, and her hair was unkempt and at times wet. Ms. Riddle noted that Britney's hair had recently been cut very short.

Ms. Riddle also testified that Britney's eating habits had been affected since Father obtained custody, that Britney now ate very little at school. She said that she spoke to Father about this, noting to him that Mother had always packed a lunch for Britney because she did not like the school food. Ms. Riddle said that Father's response was that Mother "shouldn't have left; Britney will either adapt to the school food or go without."

In Father's testimony, he did not dispute much of Mother's allegations, but asserted that he had changed since being awarded temporary custody of the children. Father acknowledged that he "might have drunk more than he should have, but wasn't an alcoholic"; he said that he had gone to one Alcoholics Anonymous meeting and decided that he "didn't have anything in common with those people." He asserted that he had since stopped drinking on his own.

Father acknowledged that, during the parties' marriage, Mother had worked hard cleaning the house and caring for the children, and had "done a better job at it than he ever could have done." He admitted that Mother had been the children's primary caregiver prior to the parties' separation, and that she had taken good care of the children during the marriage. Father acknowledged that, prior to the parties' separation, he had not gone to church with the children or gone to T-ball games and the like, but asserted that he had done these things since the parties separated.

Father admitted that he whipped the children, at times with a belt. He acknowledged whipping Britney hard enough to leave a bruise on her back, but said that it "wasn't as big a deal as Meloney and her family tried to make it out to be." He conceded that he "might have" whipped his son with a belt hard enough to leave a mark. Father asserted that he was a firm believer in discipline and said that he would discipline his children "as I see fit."

Father conceded that, shortly after Mother had knee surgery, he had "slung his wife across the room. . . ."

Father asserted in his testimony that Mother is now an unfit parent. Without offering specifics,[3] Father said that since Mother had moved in with her family, she was no longer a good mother and that the children should not be raised around Mother's family.

---

[3] A pleading filed by Mother says that Father asserted that a male friend of Mother's had slept in the same bed with Mother and Britney, and that this assertion was untrue. However, Father's assertion is not contained in the Statement of Evidence, which is deemed approved and is the record for this appeal.

Father's mother testified as well. She said that she had been staying with Father and helping care for the children. She described the children as happy and well-mannered, except when Mother came for visits. She said that her son was "a firm father," and asserted that "if it took spanking them with a belt, that was what had to be done." She said that they had cut Britney's hair very short because it was too hard to fix.

After the hearing, the trial court granted the divorce to Mother based on Father's stipulated inappropriate marital conduct. The trial court ordered that custody of the children remain with Father and awarded visitation to Mother in accordance with the Shared Parenting Provisions. Mother was ordered to pay child support and all medical, dental, psychological and optical expenses not covered by Father's insurance. In addition, Mother was awarded rehabilitative alimony for a period of twelve months, conditioned on her enrollment in and attendance at EMT classes within three months of the trial court's order. The trial court also divided the marital property such that Father received the 1998 Toyota Camry and the bedroom suite in the possession of Mother and Mother received the 1987 Acura Integra and the family's computer. From this order, Mother now appeals.

Mother first argues that the trial court erred in refusing to continue the trial because of her absent witnesses. She maintains that, had her request for a continuance been granted, the absent witnesses would have corroborated her allegations of Father's alcoholism and violence. Even without the testimony of the absent witnesses, Mother asserts that the evidence still showed her to be the more fit parent and that the trial court erred in awarding custody to Father. Mother also appeals the requirement that she pay all of the children's medical related expenses not covered by Father's insurance. She argues that the trial court erred in requiring her to attend EMT classes in order to receive rehabilitative alimony, and also appeals the trial court's division of property.

We consider first the trial court's decision to award custody to Father. A trial court's findings of fact in child custody cases are reviewed *de novo* accompanied by a presumption of the correctness of those findings. Tenn. R. App. P. 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). However, where, as in this case, the trial court fails to make specific findings of facts, this Court must make an independent review of the record. *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).

In child custody cases, the welfare and best interest of the child are paramount. *See Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. App. 1997); Tenn. Code Ann. § 36-6-106 (1996). The determination of the child's best interest must turn on the particular facts of each case. *See Taylor v. Taylor*, 849 S.W.2d 319, 326 (Tenn. 1993); *In re Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995). In *Bah v. Bah*, 668 S.W.2d 663 (Tenn. Ct. App.1983), the Court adopted the doctrine of comparative fitness as a common sense approach to determine the child's best interest. In making a custody decision, the court must consider the factors set forth in Tennessee Code Annotated § 36-6-106, including the importance of continuity in the child's life, the degree to which a parent has been the primary caregiver, the stability of each parent's family unit, evidence of physical or emotional abuse to the child or the other parent, and each parent's past performance

of parenting responsibilities. *See* Tennessee Code Annotated § 36-6-106(a)(2)-(4), (8) and (10) (Supp. 2000).

Any inquiry into the comparative fitness of parents is factually driven and turns upon a number of considerations, including the credibility and demeanor of the parties. *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). Having seen and heard the actual testimony, the trial court is in the best position to evaluate the parties' honesty and, thus, the trial court is vested with broad discretion in awarding custody. *Id.* at 631. However, the determination of the trial court must still be based on the proof in the record and upon the appropriate application of the law. *Id.*

Reviewing the facts in this case, it is difficult to see how the evidence preponderates in favor of the award of custody of Father, even considering the deference accorded to the trial court in a custody decision. In the record before this Court, Mother's testimony is essentially unrefuted, regarding Father's history of alcohol abuse, his physical verbal and emotional abuse of Mother, and his hot temper and excessive discipline, bordering on physical abuse, of the parties' children. It is undisputed that Mother was the children's primary caregiver prior to the temporary award of custody to Father, and that Mother did a good job caring for the children. Father admits he was not deeply involved in the care of the parties' children prior to the separation. The importance of continuity of care for children in divorce has been repeatedly emphasized by this Court. *See Barnhill v. Barnhill*, 826 S.W.2d 443, 453 (Tenn. Ct. App. 1991). While acknowledging his past history of alcohol abuse and physical and verbal abuse of Mother, Father maintains that he is now a changed man, ceasing consumption of alcohol with no counseling or professional help and becoming a sensitive and involved parent, taking the children to church, sports and similar activities. Yet he cavalierly dismisses his excessive discipline of the children, whipping them with a belt hard enough to leave bruises, maintaining that he will discipline the parties' children "as I see fit." When Britney's teacher told Father that Britney ate very little at school, suggesting that he pack her a lunch as Mother always had, Father responded in a manner devoid of sensitivity to the child's needs, asserting that Britney could either adapt to school food or go without.

Father asserts that he provides the more stable environment, noting that Mother lives in her parents' home while Father continues to reside in the marital home. However, this fact must be viewed in overall context. From the record in this case, Mother left the marital home with the children after Father's stipulated adultery and against a backdrop of Father's admitted alcohol abuse and physical abuse of Mother. It is undisputed that Mother was unemployed and without job skills or financial support, by virtue of the parties' agreement that she leave school to care for the parties' home and children. Indeed, Mother's testimony is unrefuted that Father belittled and demeaned Mother when she broached the idea of obtaining job training, calling her stupid and telling her she would always be a dependent housewife. The award of temporary custody to Father was conditioned on the paternal grandmother moving in with Father and the children. Mother now resides in her parents' home, with ample space and the support of her extended family, so both parents now reside in a suitable home with family support.

Considering all of these circumstances, including the fact that Mother had been the children's primary caregiver prior to the award of temporary custody, the importance of continuity in the

children's lives, Father's lack of involvement in the children's care prior to the award of temporary custody, Father's history of alcohol abuse, Father's history of physical and verbal abuse of Mother, Father's excessive discipline of the children and insensitivity to their needs, and the fact that both parents live in a suitable home with adequate support from extended family, we must reverse the decision of the trial court. Mother is hereby deemed the primary residential parent, and the cause must be remanded to the trial court to determine an appropriate visitation schedule for Father. Obviously, the award of child support to Father must also be reversed. The record does not include Father's income level, so the cause must also be remanded for an appropriate award of child support to Mother. Father is ordered to maintain health insurance on the parties' children and is ordered to pay all non-covered medical, dental, psychological and optical expenses of the children. In light of this holding, the issue on appeal regarding the trial court's refusal to continue the trial is pretermitted.

Mother also appeals the trial court's decision to condition rehabilitative alimony on her enrollment in EMT classes within three months of the trial court's order. Mother asserts that she no longer intends to go to EMT school and, thus, the condition on rehabilitative alimony is overly restrictive. The trial court, of course, is afforded wide discretion concerning an award of alimony. *Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1989). This includes the discretion to make alimony subject to conditions imposed by the court or agreed upon by the parties. *Isbell v. Isbell*, 816 S.W.2d 735, 739 (Tenn. 1991). However, where the trial court fails to make specific findings of fact considered in reaching its decision, independent review is required. *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).

The purpose of rehabilitative alimony is to rehabilitate an economically disadvantaged spouse. Tenn. Code Ann.§ 36-5-101(d)(1) (Supp. 2000). It is undisputed that Mother was in an economically disadvantaged position. In the record before this Court, it is clear that the decision for Mother to leave school, refrain from seeking employment, and care for the parties' home and children was with Father's agreement, indeed, at his insistence. The testimony regarding Mother enrolling in EMT classes was not in the context of her plans for rehabilitation. Rather, it was in the context of her testimony that, during the parties' marriage, when Mother broached the topic of obtaining job training such as enrolling in EMT classes, Father would demean and humiliate her, and insist that she remain at home. Under the circumstances of this case, in which Mother is clearly in an economically disadvantaged position, there is no reason to restrict her rehabilitation efforts to training to become an EMT. The decision of the trial court must be modified, and the award of rehabilitative alimony for twelve months is not conditioned on Mother enrolling in or attending EMT classes. On remand, the trial court may extend the rehabilitative alimony beyond twelve months if circumstances warrant.

Mother also appeals the trial court's division of marital property. The trial court's order states simply that Father was awarded the parties' 1998 Toyota Camry and the bedroom suite which was in Mother's possession, while Wife was awarded the 1987 Acura Integra and the computer. Father was ordered to pay any debts on both vehicles and Mother was required to pay the debt on the computer. The Statement of the Evidence in the record on appeal contains little evidence

regarding the martial property to be divided. It contains only Mother's testimony that when she left the marital home with the parties' children, she took the 1998 Toyota Camry, but at the time of trial she had the 1987 Acura Integra. Mother's testimony in the Statement of the Evidence is unrefuted that the 1987 vehicle was inoperable because Father had "worn [it] out. . . ." In view of Mother's undisputed economic disadvantage, the division of marital property must be modified to either award Mother the 1998 vehicle or provide an adjustment in the division of martial property or an award of alimony *in solido* to provide her the means to acquire a vehicle suitable to transport Mother and the parties' children. The cause is remanded to the trial court for its determination on this issue. In all other respects, the division of marital property is affirmed.

The decision of the trial court is affirmed in part, reversed in part, modified and remanded for further proceedings consistent with this Opinion. Costs on appeal are awarded against the Appellee, Grady Leonial Carr, III, for which execution may issue if necessary.

---

HOLLY KIRBY LILLARD, J.