IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 11, 2015 Session

**ANGELA ROSE KEE EZEKIEL v. DAVID EZEKIEL**

**Appeal from the Chancery Court for Lauderdale County**
**No. 14857     Martha Brasfield, Chancellor**

_____

**No. W2014-02332-COA-R3-CV – Filed August 17, 2015**

_____

This is an appeal of an award of alimony in futuro relative to a divorce. The trial court awarded Wife $250.00 in alimony in futuro until her retirement, and then $100.00 in alimony in futuro thereafter. We reverse the trial court's judgment and award Wife $43.00 in transitional alimony until her retirement, which alimony shall be modifiable upon a showing of a substantial and material change in circumstances.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part; Reversed in part; Modified; and Remanded.**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the Court, in which BRANDON O. GIBSON, J., and KENNY ARMSTRONG, J., joined.

Marianna Williams and Matthew W. Willis, Dyersburg, Tennessee, for the appellant, David Ezekiel.

William Dan Douglas, Jr., Ripley, Tennessee, for the appellee, Angela Rose Kee Ezekiel.

**OPINION**

**Background**

Plaintiff/Appellee Angela Rose Kee Ezekiel ("Wife") filed a complaint for divorce on October 3, 2012 against Defendant/Appellant David Ezekiel ("Husband"). At that time, the parties had been married approximately 24 years. No children were born of the marriage. The

complaint alleged the ground of irreconcilable differences. In addition to an equitable division of the marital property, Wife requested temporary and permanent alimony.

Husband filed an answer and counter-claim on October 17, 2012, admitting that irreconcilable differences existed and that the parties' marital property should be equitably divided. Husband denied, however, that Wife was entitled to alimony, either temporary or permanent. In addition, Husband alleged that wife was guilty of inappropriate marital conduct. The parties participated in mediation on August 21, 2013, which mediation was unsuccessful.

The parties each filed income and expense affidavits prior to the divorce hearing. In Wife's affidavit, she requested $700.00 per month in alimony in futuro. The trial court held a hearing on the divorce complaints on January 21, 2014. The trial court granted the parties a divorce and divided the parties' marital property. Each party was awarded various personal property. Wife was also awarded her 401K, valued at approximately $12,000.00, and one-half of Husband's 401K. With regard to the marital residence, the trial court ordered that the house be sold, that Wife be allowed to live in the house until the sale, and that each party pay one-half of the house note until the sale. The trial court also ruled that Wife would be entitled to alimony in the amount of $250.00 per month until either September 1, 2014, or the marital residence is sold, whichever occurs first. The trial court ordered that the issue of alimony would be reviewed either upon the sale of the house or September 1, 2014, again whichever came first. It appears that the parties owned other real property during the marriage but that this property was sold and used to pay marital debts by agreement of the parties during the pendency of the divorce. Each party was ordered to pay his or her own attorney's fees.

Unfortunately, the marital residence did not sell by September 1, 2014, and the trial court held a hearing on the issue of alimony on September 23, 2014. On this day, both parties filed updated income and expense affidavits. Wife's affidavit indicated that Wife earned $2,256.00 gross or $1,596.00 net (after taxes, Social Security, and Medicare) from her employment. Wife's expenses totaled $2,279.02 and included $849.02 for a rent or mortgage payment, $272.00 for a car payment, and $180.00 for insurance. Husband's affidavit indicated that he earned $3,302.00 gross or $2756.00 net (after taxes, Social Security, and Medicare). Husband indicated that his expenses totaled $2,713.76.

Only the parties testified at the hearing. Wife indicated that she was 58 years old and in good health. Wife testified that she is employed with West Tennessee State Penitentiary ("the penitentiary"), where she had worked for eight years at the time of trial. Although Wife admitted that she had earned more in a previous job, Wife testified that after she was laid-off from the higher-paying job, she was out of work for nine months before she was able to find work at the penitentiary. Further, Wife testified that she must work only two more years with

the penitentiary before she will be eligible for retirement. Wife also testified that if she retires at age sixty-seven from the penitentiary, she will receive approximately $950.00 per month in retirement pay.

Wife further testified about her efforts to sell the marital residence, including hiring a realtor for a period of time, but explained that those efforts had been fruitless. According to Wife, when the home eventually sells, she will be required to pay between $500.00 and $600.00 per month in rent. Wife admitted, however, that her income and expense affidavit was overstated in that it included the parties' entire mortgage payment, rather than only the one-half that she is responsible to pay. In addition, Wife and her counsel admitted that her insurance payment was mistakenly deducted twice from her income in her income and expense affidavit.

Wife was also questioned about the $272.00 per month car payment. Wife admitted that she was awarded a paid-off car in the divorce. Wife testified that she originally signed the note for her adult son to enable him to purchase the car and that he initially drove the car. Wife admitted that she now pays the note on this car. Wife insisted, however, that she currently drives the car. Wife provided no testimony as to what became of her previous car.

Finally, Wife testified about her adult son. Wife admitted that her thirty-three year old son lives with her in the marital home and that he pays none of the expenses associated with the home, including the mortgage, utilities, or groceries. Wife testified that her son could not pay bills because he had not been employed for "a little over a year."

Husband is eleven years younger than Wife and in "fair" health. Husband testified at trial that he had been employed at General Cable for nineteen years, but that in recent years, his income had decreased. According to Husband, he earned $51,134.03 in 2012, and $44,454.37 in 2013. As of September 2014, Husband's year to date income was $31,375.57. Husband testified that the decrease in his income resulted from the fact that General Cable was not doing well financially. Husband testified that Wife co-signed the note on a car for her son during the parties' marriage but that the son was paying the note at that time. Husband further testified that Wife was awarded $82,000.00 as a distribution from his 401K in the parties' divorce. Husband retained slightly less of the 401K, approximately $80,000.00.

At the conclusion of the hearing, the trial court made an oral ruling regarding Wife's request for alimony. According to the trial court:

> The question is how long the husband should pay the two
> hundred fifty dollars as alimony. I'm not even sure if we named
> it -- what kind of alimony it was. It was temporary alimony until
> we could come back and check on it. But I don't know that it

3

matters what we call it. We allowed it to be reviewed at some -- well, in September, it's September 2014, and you've done exactly what you were supposed to do in bringing it back to court. I have looked at a lot of different things. I realize, basically, alimony is, to me, we don't look at fault, we look at the ability -- at one's needs and the ability to pay. These people have not lived a lavish lifestyle. They may have had a motorcycle or some things that would be considered a little extra, but they sold those to be able to get their bills in order so they could separate. They have been fiscally responsible.

I looked at the ages in the sealed envelope, because we asked the wife how old she was and she'll be, I believe she said, fifty-[eight.] . . .

The husband is eleven years younger, basically, based on the statements. The husband argues that the wife can use her 401k, but that, really -- she has those funds available to her, but those are for retirement, and I don't want to consider those as to whether or not she should receive alimony now. And having said that, the husband being eleven years younger, he has time to build up his 401k, and he has time that the wife does not.

The wife will be retiring. I think she wanted to get ten years with the prison, and that will make her in her early sixties. She'll get the pension and social security, and then she'll be on Medicare.

But I've looked at the affidavit of income and expenses, and I've done a little bit of --these people are not big spenders. They're very, again, fiscally responsible. I did not do anything with the husband's income. I just noted that at the present time, his income is about forty-three dollars more than his expenses. The wife, I went through and I deducted from her expenses -- I believe it was six sixty-one. I can't find my figures, but what I did is, I took that one hundred eighty insurance and the half of the house note, and when I deducted that, I believe I got two thousand eighty-six dollars in expenses which put her four hundred seventy-two dollars behind each month.

4

The only thing that was really questioned was that car note of the son. The son is thirty-t[hree] years old. This is the wife's son. He lives with her. He does not have a job. I do not know if there's a disability. So I have to assume there's not. But this was a note that the wife took over after the divorce because the son was not working, and it had to be paid because her name was on it. But that's really the only thing that I found in these expenses that was -- should not -- should not have been there but was something that if -- it was a debt the wife would not normally have had because she took over this debt.

But even if you subtracted two seventy-two, you get two hundred dollars, and that's her insurance payment. And I was really concerned that she's at an age when she needs to be going to the doctor, and she says she hasn't gone to the doctor this year. I don't know if she needed to, but there's certain tests that you need to have run every so often, and she hasn't had those run because she's not been to the doctor. So she -- And she -- So it was just -- she's just had a problem. So we don't know what we're looking at there, but she needs to have her insurance paid.

And so I look at this and I say, "Well, that two hundred dollars -- two hundred fifty dollars is really not that big -- for her is not that big --she needs the insurance." I don't want her to have to look to her 401k until she retires because I think that's what it's for.

So I'm going to have her -- I don't think that two hundred and fifty dollars is that much. I'm going to have her pay -- let the husband pay the two hundred and fifty dollars which basically covers her insurance; and then when she finally gets on her pension and her retirement and her social security and Medicare, I'm going to lower that to a hundred dollars. And that will be in futuro. Or, you know, when she dies or remarries. But she will not officially be on Medicare's insurance because she'll be working and she'll be paying her own insurance policy when she retires.

\* \* \*

5

Two fifty until she retires. And then it goes to a hundred. And, obviously, if he loses his job, that's modifiable or -- you know, it's modifiable. I'm saying that it's modifiable.

The trial court entered a written order on October 28, 2014, finding that Wife was economically disadvantaged and therefore in need of additional support. The trial court indicated that it considered the statutory factors, including the disparity in the parties' earnings, the long duration of the marriage, and the age of the parties. Based upon these factors, the trial court awarded Wife $250.00 per month in alimony in futuro until she retires from her employment. Thereafter, Wife would be entitled to $100.00 per month, payable until Wife's death or remarriage. The trial court further ordered that the alimony should be modifiable upon a showing of a "circumstantial change warranting modification." Husband filed a timely notice of appeal.

## Issues Presented

Husband presents one issue for this Court's review, which is taken, and slightly restated, from his appellate brief: "Whether the trial court erred in awarding Wife alimony in futuro in the amount of $250.00 per month until she retires and $100.00 per month thereafter."[1]

## Standard of Review

The standard of review applicable in alimony cases was thoroughly considered in the Tennessee Supreme Court's Opinion in *Gonsewski v. Gonsewski*, 350 S.W.3d 99 (Tenn. 2011):

> [T]his Court [has] repeatedly and recently observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award. *See, e.g., Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn.2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn.2000).
>
> Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also*

---

[1] At this time, Husband does not take issue with his continuing obligation to pay one-half of the mortgage payment on the marital home until its sale.

6

*Burlew*, 40 S.W.3d at 470; ***Robertson v. Robertson***, 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." ***Kinard***, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." ***Broadbent v. Broadbent***, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. ***Robertson***, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. ***Wright ex rel. Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn. 2011); ***Henderson v. SAIA, Inc.***, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" ***Henderson***, 318 S.W.3d at 335 (quoting ***Lee Medical, Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. ***Wright***, 337 S.W.3d at 176; ***Henderson***, 318 S.W.3d at 335.

*Gonsewski*, 350 S.W.3d at 105–06 (footnote omitted).[2]

## Analysis

---

[2] Rather than citing the Tennessee Supreme Court's seminal Opinion in ***Gonsewski***, both parties' briefs cite this Court's Opinion in ***Franks v. Franks***, No. W201400429COAR3CV, 2015 WL 58913, at *6 (Tenn. Ct. App. Jan. 2, 2015). The ***Franks*** Opinion, however is designated as a Memorandum Opinion pursuant to Rule 10 of the Rules of the Court of Appeals of Tennessee, which provides that memorandum opinions "shall not be cited or relied on for any reason in any unrelated case."

Currently, Tennessee law recognizes four types of spousal support: "(1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony." *Gonsewski*, 350 S.W.3d at 107 (citing Tenn. Code Ann. § 36-5-121(d)(1)). In this case, the trial awarded Wife alimony in futuro, which is a type of alimony "intended to provide support on a long-term basis until the death or remarriage of the recipient." *Gonsewski*, 350 S.W.3d at 107 (citing Tenn. Code Ann. § 36-5-121(f)(1)). Alimony in futuro may be awarded where "the court finds that there is relative economic disadvantage and that rehabilitation is not feasible." *Gonsewski*, 350 S.W.3d at 107 (citing Tenn. Code Ann. § 36-5-121(f)(1); *see also **Riggs v. Riggs***, 250 S.W.3d 453, 456 n. 2 (Tenn. Ct. App. 2007). This type of alimony is appropriate when

> the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse.

*Gonsewski*, 350 S.W.3d at 107–08 (citing Tenn. Code Ann. § 36-5-121(f)(1)). According to the Tennessee Supreme Court:

> Alimony in futuro "is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse." *Riggs*, 250 S.W.3d at 456 n. 2. In many instances, the parties' assets and incomes simply will not permit them to achieve the same standard of living after the divorce as they enjoyed during the marriage. *Robertson*, 76 S.W.3d at 340. While enabling the spouse with less income "to maintain the pre-divorce lifestyle is a laudable goal," the reality is that "[t]wo persons living separately incur more expenses than two persons living together." *Kinard*, 986 S.W.2d at 234. "Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle . . . ." *Id.* It is not surprising, therefore, that "[t]he prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony." *Robertson*, 76 S.W.3d at 340.

8

*Gonsewski*, 350 S.W.3d at 108.

Alimony in futuro is not necessarily favored by Tennessee Courts. Instead,

> [t]he statutory framework for spousal support reflects a legislative preference favoring short-term spousal support over long-term spousal support, with the aim being to rehabilitate a spouse who is economically disadvantaged relative to the other spouse and achieve self-sufficiency where possible. *See* Tenn. Code Ann § 36-5-121(d)(2)–(3); *Bratton*, 136 S.W.3d at 605; *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003). Thus, there is a statutory bias toward awarding transitional or rehabilitative alimony over alimony in solido or in futuro. While this statutory preference does not entirely displace long-term spousal support, alimony in futuro should be awarded only when the court finds that economic rehabilitation is not feasible and long-term support is necessary. *See Bratton*, 136 S.W.3d at 605; *Robertson*, 76 S.W.3d at 341–42.

*Gonsewski*, 350 S.W.3d at 109. Rehabilitative alimony is alimony "intended to assist an economically disadvantaged spouse in acquiring additional education or training which will enable the spouse to achieve a standard of living comparable to the standard of living that existed during the marriage or the post-divorce standard of living expected to be available to the other spouse." *Id.* at 108 (citing Tenn. Code Ann. § 36-5-121(e)(1)). On the other hand, transitional alimony is "appropriate when a court finds that rehabilitation is not required but that the economically disadvantaged spouse needs financial assistance in adjusting to the economic consequences of the divorce." *Gonsewski*, 350 S.W.3d at 108 (citing Tenn. Code Ann. § 36-5-121(d)(4)).

In order to determine whether to award alimony and, if so, the amount and duration of the award, the court is directed to consider several factors, including the age, mental condition, and physical health of the parties, the length of the marriage, the parties' relative earning capacities, the separate assets of the parties, the provisions made with regard to marital property, and the standard of living the parties' enjoyed during the marriage. *See* Tenn. Code Ann. §36-5-121(i). Although the trial court should consider all relevant factors, "the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." *Gonsewski*, 350 S.W.3d at 110 (quoting *Riggs*, 250 S.W.3d at 457); *see also Bratton*, 136 S.W.3d at 605; *Robertson*, 76 S.W.3d at 342; *Burlew*, 40 S.W.3d at 470.

9

Here, the trial court considered several factors in awarding Wife alimony in futuro. First, the trial court noted the long duration of the parties' marriage in determining that long-term support was reasonable. The trial court also found highly relevant the fact that Wife is more than a decade older than Husband and will retire far sooner than he will. Also important to the trial court was Husband's higher earning capacity. Indeed, it appears that Wife earns approximately $12,500.00 less per year than Husband. Further, while acknowledging that Husband, after paying expenses, had a small surplus of funds each month of approximately $43.00, the trial court noted that even considering the alleged errors in Wife's affidavit of income and expenses, she was faced with a deficit of approximately $200.00 per month. The trial court noted that this amount was consistent with Wife's $180.00 insurance payment, which the trial court found was necessary to Wife's continued health. Finally, the trial court recognized that Wife received $82,000.00 in the divorce as a distribution from Husband's 401K but found that those funds should be protected from depletion until Wife's retirement. Based upon all of these findings, the trial court awarded Wife $250.00 in alimony in futuro until her retirement and $100.00 in alimony in futuro thereafter, as Wife would be on Medicare at that point.

As previously discussed, the two most important factors in an award of alimony are the oblige spouse's need and the obligor spouse's ability to pay. *Gonsewski*, 350 S.W.3d at 110. After a thorough review of the record, we conclude that the trial court has overestimated both Wife's need and Husband's ability to pay. First, we note that by the trial court's own calculations, Wife's deficit totals only $200.00 per month.[3] Despite this finding, the trial court awards Wife $50.00 per month over her deficit in alimony until her retirement. Additionally, although the trial court specifically equates the alimony award with Wife's ability to pay her health insurance premiums, the alimony award totals $70.00 more than Wife's insurance premiums. The trial court also continues the alimony at $100.00 per month even after Wife's retirement, despite the trial court's acknowledgment that Wife would be entitled to Medicare health insurance coverage at that time and without expressly stating how Wife's finances would be affected by the $82,000.00 Wife received from Husband's 401K, or other sources of income to which Wife would have access at retirement.

The trial court also appears to have overestimated Husband's ability to pay. At trial, Husband testified without dispute that his income was decreasing. At the time of trial, his income was approximately $39,624.00. After the removal of expenses, Husband had only a $43.00 surplus each month, as specifically found by the trial court. Despite this figure, the trial court found that requiring Husband to pay alimony in an amount over $200.00 more than his excess income was appropriate, indicating that the award was "really not that big." We respectfully disagree. There was nothing presented at trial to show that Husband's expenses

---

[3] This calculation removes the $272.00 car payment from Wife's necessary expenses. Wife does not appear to take issue with the removal of this expense from the calculation in her appellate brief.

were unreasonable or frivolous or that he was manipulating his income in an effort to avoid paying spousal support. Indeed, the trial court noted that both parties were financially responsible. Further, Husband has continued to timely pay both his own rent and one-half of the mortgage on the house where Wife currently resides and has not taken issue with the continuation of that payment at this time. Accordingly, by all accounts, Husband has only approximately $43.00 per month in excess income. This Court has previously held that it was an abuse of discretion for a trial court to order a spouse to pay alimony in an amount that would create a substantial deficit for the obligor spouse. *See* **Hazen v. Hazen**, No. W2003-00778-COA-R3CV, 2004 WL 1334517, at *3 (Tenn. Ct. App. June 14, 2004); **Walker v. Walker**, No. E2001-01759-COA-R3CV, 2002 WL 1063948, at *5 (Tenn. Ct. App. May 29, 2002); *see also* **Floyd v. Floyd**, No. M200702420COAR3CV, 2008 WL 5424014, at *12 (Tenn. Ct. App. Dec. 30, 2008) (affirming the trial court's refusal to award wife alimony where husband faced a monthly deficit). Thus, based upon the facts in this particular case, it was error for the trial court to award Wife alimony in an amount that causes Husband to experience a deficit, where there was no indication that Husband's stated income was being manipulated or that his expenses were exaggerated.

As previously discussed, "[a]n abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." **Gonsewski**, 350 S.W.3d at 106 (citing **Wright**, 337 S.W.3d at 176. The trial court's decision that Wife was in need of $250.00 per month and that Husband had the ability to pay that amount clearly rests on an "erroneous assessment of the evidence." **Gonsewski**, 350 S.W.3d at 106. We do not disagree that Wife is clearly the economically disadvantaged spouse or that based upon her expenses she maintains a deficit of approximately $200.00 per month. However, based upon the undisputed facts in the record, Husband simply does not have the excess income to pay Wife support of this amount, especially given his obligation to pay one-half of the mortgage on the marital residence. In addition, Wife has independent funds with which to finance her retirement, including her pension with the penitentiary, her 401K, and the funds awarded to her from Husband's 401K, as well as her social security benefits, as specifically found by the trial court. Given these funds, it is not clear that Wife will be in need of alimony even after her retirement; thus, despite the long duration of the parties' marriage, the presumption in favor of rehabilitative or transitional alimony inherent in the Tennessee alimony statute militates in favor of short-term support. *See* **Id.** at 109 (noting that long-term support is disfavored and should only be awarded where necessary). Consequently, the trial court's own findings regarding Wife's expenses, the purpose of the alimony award to Wife, and Husband's excess income, do not support the alimony award in this case.

11

That being said, the record does support the trial court's finding that Wife has a significant need, and Husband does have some ability to pay. Despite this fact, Husband argues in his brief that Wife should not be entitled to any alimony due to her voluntary decisions with regard to her employment and her living arrangements. Husband first argues that Wife's employment is unreasonable because Wife earned more income in a job she held nearly a decade ago. We, like the trial court, cannot conclude that Wife's decision to remain at her current employment is unreasonable or that it is inequitable for Husband to provide some support for Wife if she maintains her current employment. At trial, Wife testified that she will earn a substantial retirement income if she remains with her current employment, with whom she has worked for eight years. Nothing in the record suggests that Husband took issue with Wife's choice of employment during the parties' marriage. Indeed, Wife testified without dispute that after she was laid off from her higher-paying employment nearly a decade ago, she remained out-of-work for nearly a year before finally finding work with the penitentiary. Husband submitted no evidence that there were available jobs for someone with Wife's qualifications and/or age. Conversely, although Husband testified that his income is decreasing, Wife does not suggest that he find higher paying employment, given his long tenure with his current employer. Under these circumstances, we cannot conclude that Wife's decision to remain employed at the penitentiary prevents the court from concluding that she is an economically disadvantaged spouse entitled to alimony.

Husband also argues that Wife's decision to allow her adult son to live in her home without contributing to expenses should deprive her of the right to receive alimony. Both alimony in futuro and transitional alimony are modifiable upon a showing that a third person is living in the home of the alimony recipient, in which case a rebuttable presumption is raised that:

> (i) The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should suspend all or part of the alimony obligation of the former spouse; or

> (ii) The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.

Tenn. Code Ann. § 36-5-121(f)(2)(B) & (g)(2)(C). Recently, the Tennessee Court of Appeals recognized that while the above statute concerns only modification of an existing support award, "the public policy expressed in the statute [is] relevant" to an initial alimony award. ***Berkshire v. Berkshire***, No. E2014-00022-COA-R3CV, 2014 WL 6735385, at *5 n.3 (Tenn. Ct. App. Dec. 1, 2014).

12

Here, Wife testified that her adult son indeed resides with her. However, Wife also testified that her son does not contribute to any household expenses because he is not employed. The trial court clearly considered the fact that some of Wife's expenses may be attributable to her son in excluding Wife's $272.00 automobile payment from her necessary expenses. There was no testimony at trial that Wife was contributing to her son's support in any way other than providing him housing. Indeed, to support his argument on this issue in his brief, Husband does not point to any evidence suggesting that Wife provides support for her son, but instead states that "[i]n all likelihood, she feels responsible for her son's well-being" in addition to his car payment that she co-signed. Further, from our review of Wife's expenses, it does not appear that any of her expenses are inflated so as to account for the support of two people, rather than one: while Wife's utilities, groceries, and automobile insurance are slightly higher than Husband's, some of Husband's expenses are somewhat higher than Wife's. Under these circumstances, we cannot conclude that the trial court abused its discretion in considering Wife's need for alimony despite the fact that her adult son resides in her home.

Based upon the foregoing, we have determined that Wife has a significant need for spousal support and Husband has some ability to pay. Accordingly, we conclude that Wife is entitled to an award of $43.00 per month in transitional alimony,[4] to be paid until her retirement. We recognize, however, that Husband's ability to pay may be impacted by a further reduction in his income or the sale of the marital residence. Accordingly, consistent with the action of the trial court, we hold that in addition to the specific circumstances allowing modification provided in Tennessee Code Annotated Section 36-5-121(g)(2), Husband's alimony obligation may be modified upon a substantial and material change in circumstances shown by either party. *See* Tenn. Code Ann. § 36-5-121(g)(2)(b) (providing that transitional alimony is nonmodifiable unless, *inter alia*, "[t]he court otherwise orders in the initial decree of divorce, legal separation or order of protection").

**Conclusion**

The judgment of the trial court is affirmed in part, reversed in part, and modified. Wife is awarded $43.00 per month in transitional alimony until her retirement, which award shall be modifiable upon a showing of a substantial and material change in circumstances. This cause is remanded to the trial court for all further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are taxed one-half to Appellant, David

---

[4] Nothing in the record suggests that Wife is in need of, or capable of, rehabilitation. Accordingly, an award of transitional alimony, rather than rehabilitative alimony, is appropriate.

Ezekiel, and his surety, and one-half to Appellee, Angela Rose Kee Ezekiel, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE